SHIVERS, ET AL. *v.* MOON DISTRIBUTORS, INC., ET AL.

5-359                                    265 S. W. 2d 947

Opinion delivered March 22, 1954.

*E. M. Arnold,* for appellants.

*House, Moses & Holmes, William M. Clark* and *Frank O. Bass, Jr.,* for appellees.

*Warner & Warner, Amici Curiae.*

ROBINSON, J. The issue here is whether taxes paid to the State in the sum of $2.50 per gallon on liquor may be considered as part of the basis for computing the 13% wholesaler's mark-up allowed by law. Appellant, who was plaintiff in the Chancery Court, contends that the tax is not a part of the invoice price and should not be considered in determining the total mark-up; and that he had been compelled to pay $.066 additional for a fifth of whiskey by reason of the wholesaler's figuring as part of the cost price 13% on the $2.50 per gallon paid in taxes. Plaintiff seeks a judgment for the alleged overcharge and an injunction to prevent such charges in the future. The Chancellor sustained a demurrer to the complaint, and plaintiff has appealed.

Is the $2.50 per gallon tax paid to the State part of the invoice price of the liquor within the meaning of the statute? If it is, then the tax may be considered as a part of the basis for computing the 13% mark-up. On the other hand, if it is illegal for the wholesaler to include 13% on the tax paid as part of the mark-up, then appellant should prevail.

Act 282 of the General Assembly of 1949 regulates the price of liquor and § 3 provides: ''The wholesaler's selling price to the retailer shall be his cost (as defined in this Act) and determined by the Commissioner of Revenues, plus a mark-up of fifteen (15) per cent of cost on liquor. . . .'' Sec. 6 provides: ''The cost to the wholesaler is the actual invoice price which he pays for the merchandise, and as determined by the Commissioner of Revenues, plus actual freight and cartage costs incurred in delivery to him.'' Act 252 of 1951 reduces the allowable mark-up to 13%. Act 285 of 1953 makes a fur-

ther reduction in the mark-up to 10%. (However, this Act has been suspended by the filing of a referendum petition.) Neither the 1951 Act nor the 1953 Act makes any change in the method of computing the wholesaler's cost price.

In August, 1949, the Commissioner·of Revenues, as authorized by Act 282 of 1949, promulgated certain regulations to determine the wholesaler's cost price; the price thus determined included the tax. This regulation was formally adopted February 2, 1950. Subsequently by Act 159 of 1951 the Commissioner of Revenues' duties in connection with fixing the price of liquor were transferred to the Alcoholic Beverage Control Board. This Board adopted its own regulations, and No. 125 thereof also includes the tax as part of the cost of the liquor to the wholesaler on which is allowed a 13% mark-up. The Revenue Commissioner's construction of the Act had been given effect at the time of the adoption of Act 159 of 1951; and the Alcoholic Beverage Control Board's interpretation of the Act, being the same as that of the Revenue Commissioner, was in force at the time of the adoption of Act 285 of 1953. The 1949 Act specifically provides "The wholesaler's selling price to the retailer shall be his cost (as defined in this Act) and determined by the Commissioner of Revenues, plus a mark-up of fifteen (15) per cent of cost on liquor." The 1951 Act deals directly with the question of the amount of money the wholesaler shall be allowed to keep from the sales of liquor. The 1951 Act reduces the mark-up from 15% to 13%, and in 1953 the legislature again dealing with the subject of the wholesaler's mark-up reduced it to 10%.

Although there may be instances where the legislature re-enacts legislation without knowing all administrative interpretations placed on the former Act, it is inconceivable that here the legislature in 1951 and 1953 did not know of the construction which had been given the original 1949 Act and the 1951 Act, by first the Commissioner of Revenues and next the Alcoholic Beverage Control Board; and the legislature did not see fit to adopt

an amendment in the 1951 Act or the 1953 Act that would bring about a change in the construction of the Acts which permitted the mark-up on the amount paid as taxes. Hence it appears that the legislature acquiesced in the construction adopted by the administrative officials.

In *Hendricks* v. *Hodges, Sec'y of State,* 122 Ark. 82, 182 S. W. 538, it is said: "In interpreting the amendatory statute, we ought to follow the well established rules of statutory construction, and one of those rules is that where a statute is re-enacted in substantially the same form as the old one, the presumption should be indulged that the lawmakers intended no changes other than those clearly expressed in the language of the new statute."

"When a known statute has been re-enacted in terms, its known interpretation will be presumed to have been also adopted by the legislature." *McKenzie* v. *State,* 11 Ark. 594.

"While the interpretation of the above provisions of the Revised Statutes of the United States by the Land Department is not controlling on the courts, it is at least highly persuasive." *Moore* v. *Tillman,* 170 Ark. 895, 282 S. W. 9.

Official conduct long pursued in elections will be given great weight in determining intent of the legislature. *Adams* v. *Hale,* 213 Ark. 589, 212 S. W. 2d 330.

"Ordinarily, when the Legislature adopts certain language, or expressions, or terminology in an enactment, it adopts prior constructions or interpretations thereof." *American Workmen Insurance Company* v. *Irvin,* 194 Ark. 1149, 110 S. W. 2d 487.

In *Helvering* v. *Reynolds Co.,* 306 U. S. 110, 83 L. Ed. 536, 59 S. Ct. 423, it is said: "The administrative construction embodied in the regulation has, since at least 1920, been uniform with respect to each of the revenue acts from that of 1913 to that of 1932, as evidenced by Treasury rulings and regulations, and de-

cisions of the Board of Tax Appeals. In the meantime successive revenue acts have re-enacted, without alteration, the definition of gross income as it stood in the Acts of 1913, 1916, and 1918. Under the established rule Congress must be taken to have approved the administrative construction and thereby to have given it the force of law."

In *Walnut Grove School Dist. No. 6* v. *County Board of Education,* 204 Ark. 354, 162 S. W. 2d 64, Mr. Justice Frank Smith said: "This administrative interpretation of the legislation is not, of course, conclusive; but it is not to be disregarded. At § 219 of Crawford's Interpretation of Laws it is said that 'As a general rule executive and administrative officers will be called upon to interpret certain statutes long before the courts may have an occasion to construe them. Inasmuch as the interpretation of statutes is a judicial function, naturally the construction placed upon a statute by an executive or administrative official will not be binding upon the court. Yet where a certain contemporaneous construction has been placed upon an ambiguous statute by the executive or administrative officers, who are charged with executing the statute, and especially if such construction has been observed and acted upon for a long period of time, and generally or uniformly acquiesced in, it will not be disregarded by the courts, except for the most satisfactory, cogent or impelling reasons. In other words, the administrative construction generally should be clearly wrong before it is overturned. Such a construction, commonly referred to as practical construction, although not controlling, is nevertheless entitled to considerable weight. It is highly persuasive.' "

Moreover § 3 of Act 252 of 1951, which is the Act in effect at present, provides: "The wholesaler's selling price to the retailer shall be his cost (as defined in this Act) and determined by the Commissioner of Revenues, plus a mark-up of thirteen (13) per cent of cost on liquor." Not one word is specifically said about the tax being a part of the cost, or about permitting the wholesaler to pass on to the retailer as part of the selling

price the amount of the tax; but the administrative officials have construed the Act as permitting this to be done; and it is clear from the allegations in the amended complaint as to the price paid to the distillery by the wholesaler, and the price paid to the wholesaler by the retailer, that the wholesaler could not stay in business for any time at all unless the tax could be added to the selling price of the liquor. Hence the administrative board is undoubtedly correct in construing the tax as part of the invoice price to the wholesaler and permitting the wholesaler to treat it as such, mark it up accordingly, and pass such marked-up price on to the retailer.

We are urged to over-rule *Gipson* v. *Morley,* 217 Ark. 560, 233 S. W. 2d 79, upholding the constitutionality of Act 282 of 1949, but we adhere to the decision in that case.

**Affirmed.**