ARKANSAS PUBLIC SERVICE COMMISSION *v.*
ALLIED TELEPHONE COMPANY et al

81-163                                   625 S.W. 2d 515

Supreme Court of Arkansas
Opinion delivered December 21, 1981

*Robert Camp,* for appellant.

*H. Edward Skinner; Mitchell, Williams & Selig,* by: *Michael O'Malley; D. D. Dupree* and *Gary Hartman;* and *Friday, Eldredge & Clark,* by: *Frederick S. Ursery,* for appellees.

ROBERT H. DUDLEY, Justice. The Arkansas Public Service Commission is funded by fees which are assessed annually on the regulated utilities. The fees are based upon the company's revenue and not upon the amount of time and money it takes to regulate each utility. The issue in this case of statutory interpretation is whether the interstate toll revenues of a telephone company should be included in the company's "gross earnings" in computing the fee.

The Public Service Commission, and its predecessor Department of Public Utilities, in assessing the annual fee from 1935 to the date this series of appeals began, treated "gross earnings . . . in this state" as not including the interstate toll earnings. On August 6, 1980, the commission

issued an order reversing its interpretation of the statute and directing that interstate tolls be included. On appeal, the circuit court reversed and the commission now appeals to this court. We affirm the circuit court in its holding that a fee should not be assessed on interstate tolls.

Ark. Stat. Ann. § 73-249 (Repl. 1979) provides that an annual fee based upon "gross earnings" shall be collected from each utility. "Gross earnings" is defined by § 73-201 (k):

> (k) The term "gross earnings," when used in this Act shall include all amounts received, charged, or chargeable, for or on account of any public service furnished or supplied in this state by any public utility and shall include all gross income from all incidental, subordinate or subsidiary operations of such utility in this State; provided revenues from manufacture and sale of ice shall not be included. [Acts 1935, No. 324, § 1, p. 895; Pope's Dig., § 2064; Acts 1967, No. 234, § 4, p. 443; 1973, No. 125, § 1, p. 443.]

The commission contends that the statutory language "*all* amounts received" manifestly requires that the fee be assessed on interstate tolls, while the appellees argue that the wording of the statute excludes interstate tolls because the fee is to be assessed only on amounts received from services "supplied *in this state.*" The statute is ambiguous when applied to the facts of this case and that ambiguity is underscored by the fact that appellant commission has reversed its interpretation.

Since the wording of the statute is ambiguous, we seek to find the intent of the General Assembly by examining the statute with the aid of rules of statutory construction. One of those rules is " . . . when the Legislature adopts certain language, or expressions, or terminology in an enactment, it adopts prior construction or constructions thereof." *American Workmen Insurance Co.* v. *Irvin,* 194 Ark. 1149, 110 S.W. 2d 487 (1937).

On February 11, 1935, this court handed down its

decision in *Wiseman* v. *Arkansas Power & Light Co.,* 190 Ark. 351, 78 S.W. 2d 818 (1935) holding that a utility's revenues from the manufacture and sale of ice were not subject to the fee. The opinion reasoned that the fee charged was intended to support the commission in the performance of its regulatory jurisdiction and since the manufacture and sale of ice were not regulated no fee should be imposed. In addition, by this time, Congress had passed the Federal Communication Act of 1934, 47 U.S.C.A. § 151, et seq, which granted the Federal Communications Commission jurisdiction over interstate communications by wire and radio. It was with this background and knowledge, that the General Assembly, on April 2, 1935, passed the act which is now before us and yet nothing is said about fees being assessed on interstate revenues. From this we may infer that the General Assembly intended for the regulatory functions of the commission to be supported by a fee based on revenues generated from intrastate services regulated by the commission exactly as had been done in the past. This inference is augmented by the language of the statute which expressly provides that revenues from the sale of ice shall not be included.

In 1945 the General Assembly enacted a provision requiring the commission to give the utilities an annual statement of the fees due. Ark. Stat. Ann. § 73-249. The General Assembly is presumed to have known that the commission interpreted the statute defining gross revenues as including only intrastate tolls in providing previous statements of fees and yet no change was made in the definition of gross revenues. The known interpretation will be presumed to have been adopted by the General Assembly. *Shivers* v. *Moon Distributors, Inc.,* 223 Ark. 371, 265 S.W. 2d 947 (1954).

From 1935 until the present litigation, the act was interpreted by the commission, and its predecessor agency, as not including interstate revenues. An administrative interpretation of a statute is not conclusive, but it is a factor to be considered. As stated in *Walnut Grove School District No. 6* v. *County Board of Education,* 204 Ark. 354, 162 S.W. 2d 64 (1942):

". . . As a general rule executive and administrative officers will be called upon to interpret certain statutes long before the courts may have an occasion to construe them. Inasmuch as the interpretation of statutes is a judicial function, naturally the construction placed upon a statute by an executive or administrative official will not be binding upon the court. Yet where a certain contemporaneous construction has been placed upon an ambiguous statute by the executive or administrative officers, who are charged with executing the statute, and especially if such construction has been observed and acted upon for a long period of time, and generally or uniformly acquiesced in, it will not be disregarded by the courts, except for the most satisfactory, cogent or impelling reasons. In other words, the administrative construction generally should be clearly wrong before it is overturned. Such a construction, commonly referred to as practical construction, although not controlling, is nevertheless entitled to considerable weight. It is highly persuasive." Among the numerous cases cited in support of this statement of the law is our own case of *Moore v. Tillman,* 170 Ark. 895, 282 S.W. 9.

For these reasons we interpret the ambiguous statute to apply to intrastate tolls only.

Affirmed.

HAYS, J., not participating.

PURTLE, J., dissents.

JOHN I. PURTLE, Justice, dissenting. I have no difference with the rules of law as expressed in the majority opinion. However, I differ with the majority on the interpretation of the words expressed in the act. It is agreed that the Public Service Commission commenced collecting on the gross earnings received by these utilities in 1978. However, the statute has not been changed since 1945. This act was an attempt by the legislature to make the public utilities pay for the costs of running the Public Service Commission. In

doing so they enacted what we cite as Ark. Stat. Ann. § 73-249 (Repl. 1979), which provides that an annual fee up to 2/5 of 1% could be assessed against these utilities provided the fee was based on the gross earnings. Section (k) of Ark. Stat. Ann. § 73-201 (Act 324 of 1935, as amended) defines the term "gross earnings" to include " . . . all amounts received, charged, or chargeable, for or on account of any public service furnished or supplied in this state by any public utility and shall include all gross income from all incidental, subordinate or subsidiary operations . . . ."

The words expressed by the legislature in this act seem plain and clear. If there is no need to use a crutch in determining the meaning of the words used by the legislature, then such should not be done. The primary rule in the construction of statutes is to ascertain and give effect to the intentions of the legislature. *McDonald* v. *Wasson,* 188 Ark. 782, 67 S.W. 2d 722 (1934). It is also a cardinal rule that legislative intent is to be first determined from the language used in the statute. *Ark. State Highway Comm.* v. *Mabry,* 229 Ark. 261, 315 S.W. 2d 900 (1958). Other interpretations should only be considered if the intent of the legislature cannot be determined from the very words of the statute.

I have no hesitancy in saying that all sums collected by public utilities in the state of Arkansas are a part of their gross earnings. The fact that a telephone call is placed from Little Rock to New York does not prevent the charges, which are collected in Little Rock, from being a part of the gross earnings of the corporation. Likewise, if a call were placed in New York to Little Rock, the collection would be made in New York and would thus be a part of the gross earnings collected by the utility in New York.

The argument that the legislature knew of the previous interpretation of this statute by the Public Service Commission is of little consequence. The legislature has also known of the present policy since 1978 and has not done anything about it. In any event, this is unimportant, as are other rules of construction, as the plain language of the statute needs nothing extraneous to explain it.