## SOUTHERN FARM BUREAU LIFE INSURANCE COMPANY *v.* Mary Irene COWGER

87-300                                         748 S.W.2d 332

Supreme Court of Arkansas
Opinion delivered April 18, 1988
[Rehearing denied May 16, 1988.*]

*Friday, Eldredge & Clark*, by: *Laura A. Hensley* and *C. Tab Turner*, for appellant.

*Hendren & Hood*, for appellee.

DAVID NEWBERN, Justice. The appellant, Southern Farm Bureau Life Insurance Company (the company), insured the life of Ronald Cowger. Mr. Cowger was killed in a tractor accident, and the company refused to pay the $100,000 policy amount to the beneficiary, appellee Mary Irene Cowger, because Mr. Cowger had misrepresented his health when applying for the policy. In accordance with our decision in *National Old Line Ins. Co. v. People*, 256 Ark. 137, 506 S.W.2d 128 (1974), the trial

---

* Hickman, J., would grant rehearing.

court instructed the jury that, if the fact or facts not revealed in the insurance application were not the cause of death, the misrepresentation would not bar recovery. We overrule that case, but we do so prospectively only, and thus the judgment before us now is affirmed. We also affirm the part of the judgment allowing a fee of $33,000 to Mrs. Cowger's counsel.

Mr. and Mrs. Cowger wanted to borrow from a bank to build chicken houses on their farm. The bank required that Mr. Cowger's life be insured. Mr. Cowger applied for a $100,000 policy with the company and submitted to a physical examination conducted by a paramedic on behalf of the company who asked him questions about his health and wrote down Mr. Cowger's answers on a form. Mr. Cowger's responses included his statements that he had not suffered stomach or liver disorders or used alcohol to excess in the last ten years. The truth was that Mr. Cowger had been hospitalized more than once during that time and had been diagnosed as having cirrhosis of the liver, acute alcoholism, and delirium tremens. The evidence showed, and it is not contested by Mrs. Cowger, that Mr. Cowger was aware of his condition when he applied for the policy.

On June 21, 1986, which was within the two-year period in which the policy remained contestable, Mr. Cowger was killed by being pinned beneath an overturned tractor on a slope he was attempting to mow. He had been released from his final hospitalization for alcoholism symptoms the day before. No blood test was done, and there was no evidence Mr. Cowger was drunk or drinking when his death occurred.

## 1. Causation

In *Old Republic Ins. Co.* v. *Alexander*, 245 Ark. 1029, 436 S.W.2d 829 (1969), the insurer sued to rescind a health policy on the ground that the insured had stated he had not had "heart trouble." The insured counterclaimed to recover on the policy for injury to his leg from a shooting accident. We upheld a judgment denying rescission and awarding damages on the counterclaim because a negative answer to the question about "heart trouble" was not necessarily a misrepresentation. The insured had been diagnosed as having more than one kind of heart disease, but the results of exploratory surgery were negative.

Justice George Rose Smith filed a concurring opinion in which he stated he would have reached the same result on the counterclaim because the insured's heart condition had nothing to do with the leg injury. The opinion quoted part of what is now Ark. Code Ann. § 23-79-107 (1987) as follows:

> Misrepresentations, omissions, concealment of facts, and incorrect statements shall not prevent a recovery under the policy or contract unless either:
>
> (1) Fraudulent; or
>
> (2) Material either to the acceptance of the risk or to the hazard assumed by the insurer; or
>
> (3) The insurer in good faith would not have issued the policy or contract or would not have issued a policy or contract in as large an amount or at the same premium or rate or would not have provided coverage with respect to the hazard resulting in the loss if the facts had been made known to the insurer as required either by the application for the policy or contract or otherwise.

Justice Smith contended that these provisions were only the minimum requirements of an insurer's proof and that "irrelevant" misrepresentations should not bar insurance claims.

In *National Old Line Ins. Co.* v. *People, supra*, we adopted Justice Smith's position. In that case, an applicant for credit life insurance stated in the application, which was also the policy document issued by a car dealer as agent for the insurer, "I hereby apply for the insurance shown above and represent that I am now in good health, both mentally and physically, and free from any mental or physical impairment of any chronic disease, and am the age shown above." Just above the applicant's signature appeared the statement in larger capital letters, "I AM NOW IN GOOD HEALTH." The jury, responding to an interrogatory, concluded that the policy application contained no misrepresentation. The undisputed evidence was that the insured was not in good health but had been treated, for four years before making the application, for high blood pressure and diabetes.

The majority opinion quoted the statutory language above and concluded that there must be a causal relation between the

misrepresentation and the loss for recovery to be barred, presumably meaning a causal relation between the condition misrepresented and the loss. We stated that subsection (a)(3) of the statute supported the conclusion to some extent by this language: "the insurer in good faith . . . would not have provided coverage with respect to the hazard resulting in the loss, if the true facts had been made known." We said, "Thus it would be a defense to the insurer, in a back injury case, to show that if the applicant had disclosed a history of back trouble it would have excepted that hazard from the policy." Justice Byrd filed a persuasive dissenting opinion, the essence of which was that we were guilty of a gross misinterpretation of the statute.

While it may be that subsection (a)(3) offers some support for our rationale when combined with the assumption that the statute states only a minimum of proof the insurer must make to bar recovery for misrepresentation, that conclusion ignores the remainder of the quoted statutory language. The statute could not be clearer in stating that misrepresentation will not bar recovery unless it is fraudulent or "[m]aterial either to the acceptance of the risk or to the hazard assumed by the insurer." As one critic of our opinion put it:

> Whatever tendency the language emphasized by Justice Smith in paragraph [(a)(3)] of [the statute] may have, when lifted out of context to suggest a requirement that a misrepresented fact has contributed to the loss for which policy benefits are sought, fades when the paragraph is read as a whole.

D. F. Adams, *Misrepresentation in the Procurement of Insurance*, 4 UALR L.J. 17, at 79 (1981).

Our opinion in the *National Old Line* case, however, did not rest solely on the support we found in the statutory language. We wrote:

> Fairness and reason support the view that a causal connection should be essential. Otherwise, when the insured is killed by a stroke of lightning or by being run over by a car, the insurance company could successfully deny liability by showing that the insured was suffering from diabetes when he stated that he was in good health.

Such considerations of fairness are especially perti-
nent to a credit life insurance policy like the one before us.
This was a short-term policy, to remain in force for only
three years. The company made no medical examination of
the applicant, relying upon him either to refuse to sign the
application if he was not in good health, in which case the
policy would never be issued, or to "clip a note" to the
application, explaining his health condition. The appellant
had the burden of proving its affirmative defense, but it
made no effort to show that the automobile salesman who
took People's application made any explanation of the
printed form or of the significance of the representation of
good health. If People had lived for three years the insurer
would have sustained no loss. In the circumstances it is
plainly unjust to permit the company to deny liability on
the basis of a misrepresentation that had no connection
with People's death (or so the jury might have found) and
that would have provided no defense to the insurer if the
policy had excluded coverage for loss resulting from the
undisclosed ailments. [256 Ark. 142, 506 S.W.2d at 131.]

Given the emphasis placed on the type of policy and the type
of medical inquiry which occurred in the *National Old Line* case,
there is the temptation to limit its holding to credit life policies
tendered by automobile salespersons where no detailed medical
questions are asked. We cannot do that because the sweep of
principle adopted in the opinion is too broad. We have applied the
ruling only in very similar cases, *Ford Life Ins. Co.* v. *Samples*,
277 Ark. 351, 641 S.W.2d 708 (1982); *Ford Life Ins. Co.* v.
*Jones*, 262 Ark. 881, 563 S.W.2d 399 (1978), and not in
"regular" insurance cases where the misrepresentation occurred
in response to a more thorough investigation of the health of the
prospective insured. Thus this is, in a way, a case of first
impression in this court, and we do not feel that our decisions have
become as much a part of the statute as its very words. *See Lucky*
v. *Equity Mut. Ins. Co.*, 259 Ark. 846, 537 S.W.2d 160 (1976).
*Cf. Crawford* v. *Emcasco*, 294 Ark. 569, 745 S.W.2d 132 (1988).
Our court of appeals has, however, applied our *National Old Line*
case rationale in a regular term life insurance policy case, like the
one before us now, *Capitol Old Line Ins. Co.* v. *Gorondy*, 1 Ark.
App. 14, 612 S.W.2d 128 (1981), and in a health insurance policy

case, *Ward* v. *Union Life Ins. Co.*, 9 Ark. App. 131, 653 S.W.2d 153 (1983). In cases like the credit life cases where the insurance application questions and the answers required are very general and not detailed, the factual question whether the applicant for insurance has indeed misrepresented his or her health will be more difficult, and presumably, the fact-finder's determination will be subjected to the sort of scrutiny we gave it in our majority opinion in *Old Republic Ins. Co.* v. *Alexander, supra.* Where, however, as here, it is clear and virtually uncontested that a misrepresentation has occurred, resulting in the issuance of a policy of insurance which would not otherwise have issued, we could not approve a finding of fact to the contrary.

With respect to the fairness and justice statements made in our opinion in the *National Old Line* case we must point out that there are counter-considerations. The policy we have adopted is that regardless of a misrepresentation which causes the insurer to undertake a risk, liability will occur unless the loss is related to the fact misrepresented. This places the policy applicant in the position of being able to gamble that he or she will not sustain a loss caused by the existence of the fact misrepresented. The misrepresentation may or may not have an effect. The party defrauding the insurance company may or may not be rewarded. On the other hand, the honest applicant who has the same facts to reveal will be denied insurance because of telling the truth.

It may be that these policy considerations balance each other. We might even conclude, if it were up to us, that the fairness and justice considerations do come down somewhat on the side of the insured who has lied in order to obtain coverage. Our point is, however, that the decision has been made by the body properly charged with making such decisions, that is, the general assembly. We incorrectly ignored their decision in the *National Old Line* case and we now correct our error.

In reaching this result, we are not alone. In his 1981 article cited above, Professor Adams reported that of seventeen states which had adopted statutory rules on misrepresentation resembling our statute none had construed such a statute as incorporating the kind of causation requirement found in the *National Old Line* case, and at least three states had rejected such a reading. We have found cases published since the date of the article

256

rejecting our earlier position (although not specifically mentioning our decision), *Wickersham* v. *John Hancock Mut. Life Ins. Co.*, 413 Mich. 57, 318 N.W.2d 456 (1982); *McAllister* v. *AVEMCO Ins. Co.*, 528 A.2d 758 (Vt. 1987), and none adopting it. *See also* 7 G. Couch, *Insurance,* §§ 35:47 and 35:87 (2d ed. 1985).

■ While we now conclude that an insurer may defend a policy claim on the ground of a misrepresentation which caused the issuance of the policy but with respect to which the fact or facts misrepresented were not necessarily related to the loss sustained, we do not apply the new rule to this case. We do not know that the parties relied on our old rule in making their contract, but we must assume they did and not apply this decision retroactively. *Hare* v. *General Contract Purchase Corp.*, 220 Ark. 601, 249 S.W.2d 973 (1952). *See also Crawford* v. *Emcasco, supra; Lucky* v. *Equity Mut. Ins. Co., supra.*

*2. Attorney fee*

This case began with the filing by the company of a suit to rescind the policy. That suit died for lack of service of process, and Mrs. Cowger then brought this action. Her attorney agreed to represent her on a contingent fee basis for one-third of the recovery. Arkansas Code Ann. § 23-79-208(a) (1987) provides that a recovery against an insurer who refuses to pay will include a twelve percent penalty with "all reasonable attorneys' fees for the prosecution and collection of the loss."

Mrs. Cowger's attorney stated to the trial court that his regular hourly fee was $80 and that he had recorded 104.9 hours spent on the case which did not include early conferences. He also stated he charged $1,000 per day for trial (in this case $2,000 total) and he sought $800 per day for the presence of his associate attorney at the trial, $438.50 for court reporter fees and depositions, $12.90 telephone charges and $7.20 postage. The company objected to all charges other than the hourly charge and the $1,000 per day trial charge. Thus, apparently the company would not object to having awarded against it an attorney fee of $10,392. The trial court awarded $33,000.

■ In *Old Republic Ins. Co.* v. *Alexander, supra*, which we decided in 1969, we held that a fee of $6,000 was not excessive

where the recovery was $51,000 and we awarded an additional $1,500 for the attorney's fee on appeal. In his typically thorough fashion, Justice Fogleman reviewed the authorities on the question of the appropriateness of a fee to be awarded against a recalcitrant insurer.

> Appellant also contends that the attorney's fee of $6,000 allowed by the trial court was exorbitantly excessive. It correctly states that the fee contemplated [by the statute] is not a speculative or contingent fee but such a fee as would be reasonable for a litigant to pay his attorney for prosecuting such a case. It is not correct, however, as suggested by appellant that the mere time involved is the only factor to be considered. The purpose of the statute . . . is to permit an insured to obtain the services of a competent attorney. The amount of the fee allowed should be such that well prepared attorneys will not avoid this class of litigation or fail to devote sufficient time for thorough preparation. It would not only be commensurate with the time and amount of work required but also with the ability present and necessary to meet the issues that arise. Also we have often considered the sum recovered or the amount involved in an action in allowing fees or in considering fees allowed by trial courts. The statute requires that we do so in cases, such as this, where the insurance company brings suit to cancel a policy. It is also appropriate that consideration be given to the trial judge's acquaintance with the case. When we consider from an inspection of the record the nature of the cause, the novelty of some of the questions presented, the heat of the contest, the time necessary for preparation of the case, the standing and ability of the attorneys on both sides, and the knowledge of the trial court of the nature and the extent of the services rendered, we cannot say that this allowance on a recovery of $51,000 and interest was excessive. [Citations omitted.]

See also the factors set out in Southall v. Farm Bureau Mut. Ins. Co. of Arkansas, Inc., 283 Ark. 335, 676 S.W.2d 228 (1984), and Equitable Life Assurance Soc. of the United States v. Rummell, 257 Ark. 90, 514 S.W.2d 224 (1974), where we reiterated that the statute does not contemplate the awarding of a contingent fee

against the insurer.

██ The fee awarded by the trial court was not precisely one-third of the recovery. The judgment for Mrs. Cowger was for $100,000 plus eight percent interest from the date of Mr. Cowger's death. The twelve percent penalty based on the judgment plus interest came to $12,899.60. Her total recovery from the company, exclusive of the attorney fee, was thus something over $120,000. The contingent fee would thus be roughly $40,000. The fee of $33,000 was awarded after a hearing in which testimony was given by attorneys not involved in this claim as to what would be reasonable. In these circumstances, we cannot say the trial court abused his discretion in setting the fee. We award an additional $1,500 fee to Mrs. Cowger's attorney for the prosecution of this appeal.

Affirmed.

HICKMAN and HAYS, JJ., dissent.

STEELE HAYS, Justice, dissenting. Nothing in the majority opinion justifies overruling the established principle of Arkansas insurance law that to deny recovery an insurer must show a causal connection between a fact misrepresented in an application for life insurance and the subsequent loss. While this principle appeared in *National Old Line Ins. Co.* v. *People*, 256 Ark. 137, 506 S.W.2d 12 (1974), as an interpretation of the Arkansas Insurance Code of 1959, it actually has been a part of Arkansas law since it was first stated in *Inter-Ocean Casualty Co.* v. *Huddleston*, 184 Ark. 1129, 458 S.W. 23 (1932). A doctrine so well established in the law should not be so easily overruled, in the absence of compelling reasons.

Having been a part of our law for over a decade the rule has doubtless become a basis for insurers to anticipate losses. Professor Adams had noted Justice Byrd's comment in *National Old Line* that "the burden initially cast on insurers by the rule is not likely to remain with them, for premium rates will be adjusted to absorb the added cost . . . ." Adams, *Misrepresentation in the Procurement of Insurance*, 4 U.A.L.R. L.J. 17 (1981). To reverse the rule now invites insurers to retain the benefits which will result from our change of position.

While the majority concedes that fairness favors a causal

connection requirement, it denies that the statute admits of such an interpretation. The majority does not challenge Justice Smith's conclusion that the statute "merely provides a minimum prerequisite to the insurer's successful defense." *Old Republic Ins. Co.* v. *Alexander*, 245 Ark. 1029, 1044, 436 S.W.2d 829, 838 (1969). Nor does it complain that the causation requirement runs against public policy; indeed, several states have explicitly incorporated the requirement into their statutes. Kan. Stat. Ann. § 40-418 (1986); Mo. Rev. Stat. § 376.580 (1959); R.I. Gen. Laws § 27-4-10 (1979). Rather, under the rubric of honoring legislative intention, the majority has imposed its own judgment over time-tested law. Had the legislature actually intended not to require proof of a causal connection, it could have acted to clarify its position during any one of the legislative sessions conducted since *National Old Line* was handed down in 1974. Generally, legislative inaction following a practical interpretation of a statute is evidence that the legislature intends to adopt such an interpretation. Sutherland Stat. Const. § 49.10 (4th ed.). "There is a strong authoritative effect of judicial interpretive opinions that the legislature has acquiesced in by the lapse of time without action." Johnstone, *An Evaluation of the Rules of Statutory Interpretation*, 3 U. Kan. L. Rev. 1 (1954). Accord, *Shivers* v. *Moon Distributors*, 223 Ark. 371, 265 S.W.2d 947 (1954). By its long acquiescence in the *National Old Line* holding, the legislature has expressed its satisfaction with our interpretation of the insurance code. Thus, the majority is shunning this legislative expression by overruling *National Old Line* and giving a new and different meaning to the act. For these reasons I believe the trial court should be affirmed.

HICKMAN, J., joins this dissent.