## ARKANSAS DEPARTMENT OF POLLUTION CONTROL AND ECOLOGY v. B.J. McADAMS, INC.

89-349                                    792 S.W.2d 611

Supreme Court of Arkansas
Opinion delivered July 16, 1990

*Laura L. Mack* and *Steve Weaver*, for appellant.

No brief filed.

OTIS H. TURNER, Justice. In this original suit instituted in circuit court by the appellant, the Arkansas Department of Pollution Control and Ecology, the only question on appeal is whether the trial court properly dismissed the action on the ground that it had no jurisdiction to consider the matter prior to an administrative hearing by the department.

There is no factual dispute regarding the incidents leading up to this appeal. The appellant attempted without success to get the appellee, B.J. McAdams, Inc., to correct an ongoing pollution problem. The violation ceased, and attempts were made to set an agreed penalty for the violations. Those frustrated attempts resulted in the appellant bringing this action in circuit court pursuant to Ark. Code Ann. § 8-4-207 (Supp. 1989), alleging that the appellee "has been extremely uncooperative, hostile and recalcitrant in dealing with the Arkansas Department of Pollution Control and Ecology. Therefore, plaintiff prays that a civil penalty be assessed against the defendant in the amount of $10,000."

At the time of the filing of the department's complaint, the violation had ceased, the appellant was not seeking a restraining order or any other remedial measure, and the $10,000 civil penalty requested was in addition to all costs and expenses.

Arkansas Code Annotated § 8-4-103 provides:

(b) The Department of Pollution Control and Ecology is authorized to institute a civil action in any court of

competent jurisdiction to restrain any violation of, and to compel compliance with, provisions of this chapter and any rules, regulations, orders, or permits issued pursuant thereto to require the taking of such remedial measures as may be necessary or appropriate to implement or effectuate the provisions and purposes of this chapter or to recover any expenses reasonably incurred by the department in removing, correcting, or terminating any adverse effects resulting therefrom. These purposes may include the cost of investigation, inspection, or survey establishing such violation or unlawful act. . . .

(c) Any person who violates any provision of this chapter or the regulations issued pursuant to this chapter, or who violates any condition of a permit issued under this chapter, may:

(1) In accordance with the regulations issued by the commission, be assessed a civil penalty by the commission. The penalty shall not exceed $5,000 for each violation and each day of a continuing violation may be deemed a separate violation for purposes of penalty assessments. However, no civil penalty may be assessed until the person charged with the violation has been given the opportunity for a hearing on the violation pursuant to sections 8-4-205, 8-4-212, and 8-4-218—8-4-221. Appeal of the commission's decision may be taken in accordance with the appellate procedure specified in sections 8-4-222—8-4-229;

(2) In any civil action instituted by the department under this chapter, be assessed a civil penalty by the court. The penalty shall not exceed $5,000 for each violation. Each day of a continuing violation may be deemed a separate violation for purposes of penalty assessments.

The original legislative act contained only the provisions for a "civil action." A 1983 amendment supplemented the original act by adding subsection (b), the provision against violators to be *assessed by the commission.*

■ The problem with this case is that it is neither fish nor fowl. It is an attempt on the part of the appellant to obtain

assessment of a civil penalty by the circuit court without filing any civil action under Ark. Code Ann. § 8-4-103(b). There was no current violation at the time the appellant sought the penalty. The plain wording of Ark. Code Ann. § 8-4-103(b) only grants to the trial court jurisdiction to hear civil actions filed by the department "to restrain any violation of, and to compel compliance with, provisions of this chapter and any rules, regulations, orders, or permits issued pursuant thereto. . . ."

Here, the violation had ceased, and the commission, pursuant to Ark. Code Ann. § 8-4-103(c)(1) was empowered, without filing any civil action but pursuant to its regulations, to assess a penalty. This is a provision which is not authorized by the statute.

Admittedly, a clean environment is of major importance and promotes the public welfare. Yet the regulations and the procedures to be followed in the enforcement of those regulations are matters to be left to the legislative process. The legislature has spoken by the enactment of Ark. Code Ann. § 8-4-103(b) and (c). The provisions of § 8-4-103(c)(1) should have been followed, as held by the trial court, and the trial court's dismissal is affirmed.

Affirmed.

HAYS and GLAZE, JJ., dissent.

STEELE HAYS, Justice, dissenting. These statutes are less than crystal clear and I concede that an arguable basis exists for the construction adopted by the majority. But other things being equal, as I believe they are, there are stronger reasons to prefer the interpretation urged by the Department, reasons supported by sound policy considerations.

Whether we construe section (b) so that penalties are included in the remedies allowed the court "to compel compliance" or we find provision for an independent action for penalties only, under section (c)(2), I believe the Department is correct, that it was error for the trial court to dismiss the suit.

First, these statutes are remedial in nature — they seek "the correction of recognized errors and abuse in introducing some new regulation for the advancement of the public welfare." 73 Am. Jur. 2d *Statutes* § 278, 279 (1974). "Statutes enacted for the public benefit should be interpreted most favorably to the

public." *Arkansas Gazette Co.* v. *Pickens*, 258 Ark. 69, 522 S.W.2d 350 (1975). "Such statutes should receive such construction as would effect their object, suppress the mischief, advance the remedy, and defeat al evasions for the continuance of the mischief." 73 Am. Jur. 2d *Statutes* § 281 (1974). Moreover, remedial statutes are to be liberally construed. *Aluminum Co. of America* v. *Neal*, 4 Ark. App. 11, 626 S.W.2d 620 (1982). The growing indications of irreversible environmental damage are so prevalent they need no documentation. Hence, if we are to err in interpreting these statutes, it should be on the side of a broad, as opposed to a narrow, construction.

Second, agency interpretations of statutes, while not binding on this court, are afforded great deference. *Arkansas Department of Human Services* v. *Green Acres Nursing Homes, Inc.,* 296 Ark. 475, 757 S.W.2d 563 (1988); *Arkansas Public Service Commission* v. *Allied Telephone Co.,* 274 Ark. 478, 625 S.W.2d 515 (1981). Such deference has been granted by the federal courts in their interpretations of federal environmental statutes. 61A Am. Jur. 2d *Pollution Control* § 179 (1981). Here, the Department has concluded that it is given a choice between administrative proceedings and instituting civil suits, because a civil suit may be preferable to administrative proceedings where urgency is required in discharging the duties imposed on the Department.

While the rules of statutory construction favor the Department, there is also a sound basis for concluding that the legislature intended to provide the Department with an option to proceed directly with a civil suit. In matters of environmental damage time can be of the essence — to restrain pollution or to assess damages and begin any necessary clean up. The delay involved in following the route of traditional administrative remedies could contribute to greater, even irreparable, damage in some cases. Similar federal environmental statutes have been held to afford the same direct action. 2 W. Rogers, *Environmental Law,* § 4.40 (1986); *and see* e.g., *United States* v. *Earth Sciences, Inc.,* 599 F.2d 368 (10th Cir. 1979).

For the foregoing reasons, I would hold the Department was authorized to institute this civil suit for penalties in the circuit court, in the first instance, and that court had jurisdiction to hear

the case.

GLAZE, J., joins this dissent.

TOM GLAZE, Justice, dissenting. The majority recites but fails to discuss Act 529 of 1987, codified as Ark. Code Ann. § 8-4-103(c)(2) (Supp. 1989), which authorizes a court to assess a civil penalty up to $5,000.00 for each violation of the Arkansas Water and Air Pollution Control Act. Act 529 merely gave the Department of Pollution Control and Ecology Commission the option to assess a civil penalty or to request a court to do so. In my view, that is all this case entails. Appellee had been properly notified of its infractions by the Commission, but it continued to violate the law another fourteen months before the Commission filed this action. After appellee ceased violating the law, the Commission filed suit for the court to assess penalties for the period the appellee had violated the law. The majority holds the Commission was too late because the court could only assess penalties in a proceeding brought to restrain appellee from violating the law. Such a construction of the state's Water and Air Pollution Control Act is much too restrictive. Under such a construction, a violator could continue its unlawful acts with impunity until the Commission actually filed its suit in court or took formal administrative action.

In my opinion, § 8-4-103(c)(2) clearly authorized the circuit court to assess penalties for the period appellee violated Arkansas's Water and Air Pollution Control Act. Therefore, I would reverse and remand this cause to exercise its jurisdiction in this regard.

HAYS, J., joins this dissent.