MCI Telecommunications Corporation,, Plaintiff-Respondent,†

v.

The State of Wisconsin; Cathy S. Zeuske, in her capacity as the Treasurer of the State of Wisconsin; and the Public Service Commission of Wisconsin, Defendants-Appellants.

Court of Appeals

*No. 95–0915. Submitted on briefs December 12, 1995.—Decided July 11, 1996.*

(Also reported in 553 N.W.2d 284.)

†Petition to review granted.

For the defendants-appellants the cause was submitted on the briefs of *Steven M. Schur*, chief counsel, and *Steven Levine*, legal counsel, of *Public Service Commission of Wisconsin*.

For the plaintiff-respondent the cause was submitted on the brief of *Niles Berman* and *Janet L. Kelly* of *Wheeler, Van Sickle & Anderson, S.C.* of Madison.

Before Eich, C.J., Sundby and Vergeront, JJ.

VERGERONT, J. The Public Service Commission (PSC) and Cathy Zeuske, in her capacity as treasurer of the State of Wisconsin, appeal from an order reversing the PSC's interpretation of § 196.85(2), STATS., Wisconsin's "remainder assessment" statute, and from an order denying their motion for reconsideration.[1] The PSC concluded that MCI

---

[1] Section 196.85(2), STATS., provides in part:

The commission shall annually, within 90 days of the commencement of each fiscal year, calculate the total of its expenditures during the prior fiscal year which are reasonably attributable to the performance of its duties relating to public utilities, sewerage systems and power districts under this chapter and chs. 66, 184 and 198 and expenditures of the state for state government operations to support the performance of such duties. For purposes of such calculation, 90% of the expenditures so determined shall be expenditures of the commission and 10% of the expenditures so determined shall be expenditures for state government operations. The commission shall deduct from this total all amounts chargeable to public utilities, sewerage systems and power districts under sub. (1) and s. 184.10 (3). The commission shall assess a sum equal to the remainder plus 10% of the remainder to the public utilities and power districts in proportion to their respective gross operating revenues during the last calendar year, derived from intrastate operations. If, at the time of payment, the prior year's expenditures made under this section exceeded the payment made under this section in the prior year, the commission shall charge the remainder to the public utilities and power districts in proportion to their gross operating revenues during the last calendar year. If, at the time of payment it is determined that the prior year's expenditures made under this section were less than the payment made under this section in the prior year, the commission shall credit the difference to the current year's payment. The assessment shall be paid within 30 days after the bill

Telecommunications Corporation's revenues from sales of interexchange telecommunications (long-distance telephone calls) that originate in Wisconsin and terminate outside the state are "revenues . . . derived from intrastate operations" within the meaning of § 196.85(2). We conclude the PSC's interpretation of the statute is reasonable and reverse the orders of the trial court.

## BACKGROUND

MCI Telecommunications Corporation is a public utility that provides telecommunications services to customers in Wisconsin.[2] MCI provides interexchange telecommunications services for telecommunications that originate in Wisconsin and terminate both inside and outside the state. MCI owns or leases equipment in Wisconsin which it uses to provide these services.

A telecommunication that originates in one state and terminates in another state is an interstate telecommunication. *See* 47 U.S.C. § 153(e). A telecommunication that both originates and terminates within one state is an intrastate telecommunication. *See* 47 U.S.C. § 152(b). The Federal Communications Commission has exclusive regulatory jurisdiction over interstate telecommunications. *See* 47 U.S.C. § 152(a). The regulation of intrastate telecommunications is entrusted to the states. 47 U.S.C. § 152(b); *Nat'l Ass'n of Regulatory*

---

has been mailed to the public utilities and power districts. The bill constitutes notice of the assessment and demand of payment. Ninety percent of the payment shall be credited to the appropriation account under s. 20.155 (1) (g).

[2] Upon the effective date of 1993 Wis. Act 496, MCI will be classified under ch. 196, STATS., as a telecommunications carrier rather than a public utility.

*Util. Comm'rs v. FCC*, 746 F.2d 1492, 1498 (D.C. Cir. 1984).

The PSC is the state agency charged under ch. 196, STATS., with regulating public utilities in Wisconsin. The PSC regulates the intrastate activities of telecommunications utilities in Wisconsin. Interexchange carriers such as MCI are subject to less regulation by the PSC than local exchange companies. For example, interexchange carriers must file annual reports and tariffs, and are subject to PSC complaint procedures. However, interexchange carriers are not required to seek prior PSC approval of construction expenditures, affiliated interest transactions, or securities transactions.

The PSC engages in some activities regarding nationwide utility issues, which are authorized by § 196.02(12), STATS. The PSC regularly participates in proceedings before various federal regulatory agencies on behalf of the citizens of Wisconsin, including the Federal Energy Regulatory Commission, the Federal Communications Commission, the Nuclear Regulatory Commission, and Federal Communications Commission joint boards. The PSC is also a member of a number of national and regional regulatory associations to which it pays dues.

Pursuant to § 196.85, STATS., the PSC is authorized to annually assess public utilities providing energy, telecommunications and water services under its jurisdiction to recover expenses reasonably related to the performance of its regulatory duties. To recover expenses not attributable to a specific utility, the PSC assesses utilities in proportion to each utility's "gross operating revenues during the last calendar year, derived from intrastate operations." Section 196.85(2).

This statute is referred to as Wisconsin's "remainder assessment" statute.

The PSC interprets § 196.85(2), STATS., to include a public utility's revenues from telecommunications made from a telephone located in Wisconsin, regardless of whether the destination of the telecommunication initiated by the customer is inside or outside the state. Revenues from telecommunications made by MCI customers located outside Wisconsin to a telephone in this state are not included. The PSC has interpreted the statute in this manner since the break-up of the Bell System in 1984. The PSC re-examined its process of determining assessable revenues in 1989 and reconfirmed its policy.

MCI challenged the PSC's interpretation and application of § 196.85(2), STATS., specifically with respect to fiscal years 1990-91, 1991-92, and 1992-93.[3] MCI argued that the statute is plain on its face and that "revenues . . . derived from intrastate operations" means revenues derived from intrastate telecommunications (telecommunications that both originate and terminate inside Wisconsin). In MCI's view, revenues

[3] MCI paid its assessments and filed written objections to the assessments pursuant to § 196.85(4), STATS. The difference between the PSC's calculation of MCI's remainder assessments—based on MCI's revenues from calls originating in Wisconsin and terminating both inside and outside Wisconsin—and MCI's calculation are as follows: (1) In 1990-91, MCI's calculation of its remainder assessment was $29,797.12, the PSC's calculation was $112,569.10, for a difference of $82,771.98; (2) In 1991-92, MCI's calculation was $34,979.41, the PSC's calculation was $93,091.38, for a difference of $58,111.97; and (3) In 1992-93, MCI's calculation was $38,477.35, the PSC's calculation was $102,400.51, for a difference of $63,923.16.

from telecommunications that originate in Wisconsin but terminate outside the state are revenues derived from *interstate* operations and should not be included in the calculation of its remainder assessment under § 196.85(2). MCI's challenge was rejected by the PSC.

The parties stipulated to a statement of facts and the trial court ruled in favor of MCI on cross-motions for summary judgment. The trial court determined that § 196.85(2), STATS., is unambiguous and that the term "intrastate operations" means "intrastate tele-communications." The court stated that revenues from telecommunications that originate in Wisconsin but terminate outside of the state are revenues derived from *interstate* operations because they do not occur wholly within the boundaries of Wisconsin. The court concluded that the PSC's interpretation directly contravened the plain language of the statute.

The resolution of this case turns on an interpretation of § 196.85(2), STATS. The goal of statutory interpretation is to ascertain the intent of the legislature. *Rolo v. Goers*, 174 Wis. 2d 709, 715, 497 N.W.2d 724, 726 (1993). We first look to the language of the statute. *State Historical Society v. Village of Maple Bluff*, 112 Wis. 2d 246, 252, 332 N.W.2d 792, 795 (1983). If the plain meaning is clear, we do not look to rules of statutory construction or other extrinsic aids. *Id.* at 252-53, 332 N.W.2d at 795. Instead, we simply apply the language of the statute to the facts before us. *Id.* If, however, the statute is ambiguous, we may examine the scope, history, context, subject matter and purpose of the statute. *Rolo*, 174 Wis. 2d at 715, 497 N.W.2d at 726. Furthermore, if an administrative agency has been charged with the statute's enforcement, we may also look to the agency's interpretation.

400

*UFE Inc. v. LIRC*, 201 Wis. 2d 274, 282, 548 N.W.2d 57, 60 (1996).

## DISCUSSION

Section 196.85(2), STATS., provides that the PSC shall assess the remainder assessment of utilities "in proportion to their respective gross operating revenues during the last calendar year, derived from intrastate operations." The term "intrastate operations" is not defined in the statute.

The PSC takes the position that "revenues . . . derived from intrastate operations" includes revenues from all sales of interexchange telecommunications to customers residing in Wisconsin, regardless of the destination of the telecommunication. The PSC maintains that such an interpretation is reasonable because: (1) the customer to whom the interexchange telecommunication is sold is located in Wisconsin, and (2) MCI owns and operates, or leases and operates, facilities in Wisconsin that are involved in providing interexchange telecommunications services. The PSC argues that if the legislature had intended to limit the revenues upon which the PSC may base a remainder assessment to revenues derived from intrastate telecommunications, it would have used the term "intrastate telecommunications" rather than "intrastate operations" in § 196.85(2), STATS.

MCI, by contrast, interprets "revenues . . . derived from intrastate operations" to mean revenues derived from intrastate telecommunications. MCI argues that "interstate" means transactions between states, while "intrastate" means transactions wholly within a single state, and that under these definitions, "intrastate operations" cannot include telecommunications between points in different states. According to MCI,

the language of the statute is plain and admits of no other interpretation.

We do not agree with MCI that the meaning of the statute is clear on its face. Since the statute applies to utilities providing energy, telecommunications and water services, the phrase "revenues . . . derived from intrastate operations" necessarily has a different meaning as applied to each type of public utility. As applied to telecommunications utilities, we conclude that the interpretations proposed by both the PSC and MCI are reasonable. The statute is therefore ambiguous. *See State v. Martin*, 162 Wis. 2d 883, 894, 470 N.W.2d 900, 904 (1991) (a statute is ambiguous if it is susceptible to two reasonable interpretations). We thus turn to extrinsic sources and rules of statutory construction in order to determine the intent of the legislature in enacting § 196.85(2), STATS. One such extrinsic source is the interpretation of the agency charged with enforcing the statute. *UFE Inc.*, 201 Wis. 2d at 283, 548 N.W.2d at 61.

We have applied three distinct levels of deference to agency interpretations of statutes: great weight, due weight and de novo review. *See Jicha v. DILHR*, 169 Wis. 2d 284, 290-91, 485 N.W.2d 256, 258-59 (1992). The PSC contends that its interpretation of the statute is entitled to great weight. In order for an agency interpretation to be accorded great weight, all four of the following requirements must be met: (1) the agency was charged by the legislature with the duty of administering the statute; (2) the interpretation of the agency is one of long-standing; (3) the agency employed its expertise or specialized knowledge in forming the interpretation; and (4) the agency's interpretation will

402

provide uniformity and consistency in the application of the statute. *Harnischfeger Corp. v. LIRC*, 196 Wis. 2d 650, 660, 539 N.W.2d 98, 102 (1995); *UFE Inc.*, 201 Wis. 2d at 284, 548 N.W.2d at 61-62.

MCI argues that we should interpret the statute de novo. This standard of review is applicable only when the issue is clearly one of first impression or when an agency's position has been so inconsistent as to provide no real guidance. *UFE Inc.*, 201 Wis. 2d at 285, 548 N.W.2d at 62. However, since MCI has stipulated that the PSC has interpreted the statute in the same manner since 1984, and points to no instance of inconsistency by the PSC, the de novo standard is not applicable.

■

We conclude the PSC's interpretation of § 196.85(2), STATS., is entitled to great weight. First, the PSC is charged with administering § 196.85(2). Second, the PSC has interpreted the statute to include gross revenues from telecommunications originating in Wisconsin and terminating both within and outside the state since 1984. Third, the PSC exercised its expertise in re-examining the process of determining assessable revenues in 1989. Finally, MCI does not dispute that the PSC's interpretation will provide uniformity and consistency in the application of the statute.

■

When an agency's statutory interpretation is accorded great weight, it will be upheld if reasonable, even if the court believes that an alternative interpretation is also reasonable. The burden is on the party seeking to overturn the agency action to show that the agency's interpretation is unreasonable. *Harnischfeger Corp.*, 196 Wis. 2d at 661, 539 N.W.2d at 102. An interpretation is unreasonable if it directly contravenes the

language of the statute, is clearly contrary to legislative intent or is without a rational basis. *Id.* at 662, 539 N.W.2d at 103. Because of our conclusion that the statute is ambiguous, the PSC's interpretation does not directly contravene the statutory language. *See id.*

MCI argues that the PSC's interpretation of the statute is unreasonable because, while the PSC has authority to regulate only intrastate telecommunications, *see* 47 U.S.C. § 152(b), it seeks to impose an assessment based on revenues MCI receives from interstate telecommunications, over which the FCC has exclusive jurisdiction, *see* 47 U.S.C. § 152(a). MCI contends that because interstate telecommunications are not regulated by the PSC, the revenues these telecommunications generate should not be included in the calculation under § 196.85(2), STATS.

The flaw in MCI's argument is that it equates "intrastate operations" and "intrastate telecommunications." We recognize that the FCC regulates interstate telecommunications, while the PSC regulates intrastate telecommunications. However, § 196.85(2), STATS., does not refer to jurisdictional boundaries and there is no indication that the legislature intended to distinguish between revenues derived from intrastate telecommunications and revenues derived from interstate telecommunications. The purpose of § 196.85(2) is to recover expenditures attributable to the performance of the PSC's duties and to apportion the burden in a manner that reflects the extent to which each utility is responsible for the PSC's activities. The revenues that a public utility earns from its operations in Wisconsin provide an appropriate basis for estimating the degree to which that utility contributes to the need for the PSC's regulatory activities. The revenues MCI receives from its operations in Wisconsin include reve-

404

nues from sales of interstate telecommunications to customers in Wisconsin.

██

Section 196.85(2), STATS., does not limit the revenues upon which the PSC may base its assessment to revenues derived from services over which the PSC directly exercises regulatory jurisdiction. It is undisputed that the PSC incurs costs associated with its ongoing and significant participation in activities regarding nationwide utility issues. The PSC regularly participates in proceedings before the Federal Communications Commission (FCC), the Federal Energy Regulatory Commission and the Nuclear Regulatory Commission. The PSC also participates in FCC joint boards that meet to advise the FCC on telecommunications regulatory issues, including issues related to the respective jurisdiction of the FCC and state regulatory commissions. MCI's interpretation of the statute does not recognize these costs incurred by the PSC that arise from regulating a telecommunications utility that receives revenues from both intrastate telecommunications (regulated by the PSC) and interstate telecommunications (regulated by the FCC).

MCI also argues that the PSC's interpretation of the statute is inconsistent with the statute's legislative history. As originally passed in 1931, § 196.85(2), STATS., did not contain the phrase "derived from intrastate operations." *See* Laws of 1931, ch. 183. This phrase was added in a special legislative session six months later. *See* Laws of Special Session of 1931, ch. 16. MCI contends that the amendment was made because the statute, as first passed, implicitly imposed the assessment on *interstate* as well as intrastate telecommunications, and the legislature wanted to restrict

its application to revenues from intrastate telecommunications only.

We do not find MCI's analysis of the statute's legislative history persuasive. First, as indicated, the statute uses the term "intrastate operations," not "intrastate telecommunications." Second, the statute applies to all types of utilities, not only telecommunications utilities. Any argument that the amendment was aimed at telecommunications utilities is simply speculation. Finally, the PSC reasonably argues that the legislature intended to clarify that only revenues derived from a utility's sale of utility services to customers in Wisconsin are included in the calculation of the utility's remainder assessment, as opposed to revenues derived from a utility's sale of utility services to customers in another state.

MCI contends that if the PSC's interpretation of "intrastate operations" is accepted, "interstate telecommunications do not exist." We reject this argument. Again, MCI fails to distinguish between "intrastate telecommunications" and "intrastate operations." The PSC does not deny that a telecommunication that originates in Wisconsin and terminates in another state is an interstate telecommunication. The PSC simply maintains that MCI's revenues from interstate telecommunications that originate in Wisconsin are derived from intrastate operations because the customer to whom the interstate telecommunication service is sold is located in Wisconsin.

MCI relies on *Arkansas PSC v. Allied Tel. Co.*, 625 S.W.2d 515 (Ark. 1981). While the court in that case did construe an Arkansas statute that is similar to § 196.85(2), STATS., to include revenues only from intrastate telecommunications, it concluded the statute was

406

subject to at least two reasonable interpretations and, therefore, was ambiguous. As we have already indicated, we must uphold an agency's interpretation of an ambiguous statute if it is reasonable. *Harnischfeger Corp.*, 196 Wis. 2d at 661, 539 N.W.2d at 102. The *Arkansas PSC* court also noted that the Arkansas PSC had interpreted the statute to include only revenues from intrastate telecommunications for more than forty years prior to the Arkansas PSC's most recent decision holding to the contrary. *Arkansas PSC*, 625 S.W.2d at 517. Here, by contrast, the PSC has interpreted § 196.85(2) to include revenues from all interexchange telecommunications originating in Wisconsin consistently since 1984. We do not find the *Arkansas PSC* opinion persuasive authority.

MCI also relies on *Kentucky Natural Gas Corp. v. PSC*, 28 F. Supp. 509 (E.D. Ky. 1939), *aff'd*, 119 F.2d 417 (6th Cir. 1941), but that case differs significantly on the facts. The primary dispute in that case involved whether the Kentucky PSC or the Federal Power Commission (FPC) could regulate a natural gas company that produced and sold gas in Kentucky, but was predominantly interstate in character. After the court concluded that only the FPC could regulate the company's business, it stated that "it necessarily flows that assessments against [the company] for the maintenance of the [Kentucky PSC] are unenforceable." *Id.* at 513. In this case, by contrast, the PSC does regulate MCI, and there is no dispute that the PSC can impose a remainder assessment on MCI. The dispute centers on the PSC's method of assessment.

*By the Court.*—Orders reversed.

SUNDBY, J. (*dissenting*). I agree with the trial court that the word "intrastate" as used in § 196.85(2), STATS., means "existing or occurring within the boundaries of a state . . . ." THE RANDOM HOUSE DICTIONARY OF THE ENGLISH LANGUAGE 1001 (2d ed. 1987). "Interstate" is, of course, "intrastate's" antonym. RANDOM HOUSE defines "interstate" as "connecting or involving different states: *interstate commerce.*" *Id.* at 999.

I further agree with the trial court that construction of the statute is unnecessary in view of its plain language. *See Girouard v. Circuit Court for Jackson Co.*, 155 Wis. 2d 148, 156, 454 N.W.2d 792, 795 (1990). However, because we are dealing with the construction of a statute by an administrative agency which has existed over time, we must find that the Commission's construction is unreasonable. *See Carrion Corp. v. DOR*, 179 Wis. 2d 254, 265, 507 N.W.2d 356, 359 (Ct. App. 1993); *see also Lisney v. LIRC*, 171 Wis. 2d 499, 506, 493 N.W.2d 14, 16 (1992).

The Commission's request for deference is considerably weakened by the fact that its construction was first adopted in 1984 even though the disputed language was added in the 1931 Special Session of the legislature.[1] As the court in *American Motors Corp. v. DILHR*, 101 Wis. 2d 337, 357, 305 N.W.2d 62, 71 (1981), stated: "This 'Johnny Come Lately' construction of the statute hardly meets the requirement that there be substantial contemporaneity to be accorded judicial deference."

In § 196.85(2), STATS., the legislature made a policy decision that the Commission's expenditures reasonably attributable to the performance of its duties relating to public utilities, and expenditures of the

---

[1] Section 196.85, STATS., became effective June 6, 1931. Laws of 1931, ch. 183, § 3.

408

state for state governmental operations to support the performance of its duties, shall be assessed to a public utility only for its operating revenues "derived from intrastate operations." There is a logic to this public policy. The legislature may have concluded that fairness dictated that it require the Commission to recover only its expenditures for the provision of intrastate services to public utilities. I find it significant that § 196.85(2) requires the Commission to calculate not only its expenditures reasonably attributable to the performance of its duties relating to public utilities, but also expenditures of the state for state governmental operations to support the performance of such duties. The legislature may have considered that state governmental operations such as the provision of roads, schools, police protection, welfare services, and similar services could not fairly be attributed to the interstate operations of a public utility. We should not forget that the language we review came into the statutes in 1931. The revenues of a telephone company from long distance services in 1931 and the Commission's performance of services for such operations may have been a minor fraction of the telephone company's total revenues and of the Commission's expenditures. The legislature may well have made a different policy determination were it addressing the issue in 1996, and I suggest the Commission should convince the legislature that performance of its duties and expenditures of the state for state governmental operations to support such duties have changed dramatically, and it is now fair, even imperative, that the Commission assess telecommunication's utilities for interstate as well as intrastate operations.

Finally, I return to the language of the statute. After the Commission calculates its expenditures rea-

sonably attributable to the performance of its duties relating to public utilities and expenditures of the state for state governmental operations to support the performance of such services, the Commission makes certain deductions and then the statute requires that, "[t]he commission shall assess a sum equal to the remainder plus 10% of the remainder to the public utilities and power districts in proportion to the respective gross operating revenues during the last calendar year, *derived from intrastate operations*." (Emphasis added.) If the Commission's construction of the statute is correct, the emphasized clause of this section is meaningless. The effect of the Commission's interpretation is to amend the statute to read: "The commission shall assess a sum equal to the remainder plus 10% of the remainder to the public utilities and power districts in proportion to the respective gross operating revenues during the last calendar year."

For these reasons, I cannot join in our decision. I dissent.