IN RE the TERMINATION OF PARENTAL RIGHTS TO JESSICA N., a Person Under the Age of 18:

CARLA B., Petitioner-Respondent,

v.

TIMOTHY N., Respondent-Appellant.†

Court of Appeals

*No. 99–0853. Submitted on briefs May 14, 1999.—Decided June 9, 1999.*

(Also reported in 598 N.W.2d 924.)

†Petition to review denied.

On behalf of the respondent-appellant, the cause was submitted on the brief of *Len Kachinsky* of *Kachinsky & Petit Law Offices* of Neenah.

On behalf of the petitioner-respondent, the cause was submitted on the brief of *Michael E. Lambert* of *Dewane, Dewane, Kummer, Lambert & Fox, LLP,* of Manitowoc.

Before Brown, Nettesheim and Anderson, JJ.

BROWN, J.   Timothy N. appeals from an order terminating his parental rights to Jessica N. on the ground that he abandoned her. *See* § 48.415(1), STATS. Carla B., the mother of Jessica, points to § 809.107(2), STATS., which details how to appeal such an order. She observes that it requires, inter alia, service of a copy of a notice of intent to appeal upon a number of persons, including her. Because she did not get served, she argues that we should dismiss the appeal and not reach

the merits. While she does not cast her motion in jurisdictional terms, we have sua sponte considered the question in that light as is our duty; we conclude that the lack of service does not deprive this court of jurisdiction. It is the filing of the notice of intent, not its service on the child's parent and opposing counsel, that provides this court with jurisdiction over a TPR appeal. As to Carla's claim that she was prejudiced by the untimely service, we decide to reach the merits for the reasons expressed below. On the merits, we affirm.

Jessica is the daughter of Timothy and Carla. She was born in 1989. In October 1993, Timothy and Carla divorced. Their Marital Settlement Agreement provided that Timothy "shall be entitled to supervised visitation at a place agreed to by the parties on Sunday afternoons from 12:00 noon until 3:00 p.m., at such time as his therapist believes that both Timothy [ ] and Jessica [ ] would benefit from such visitation and that Timothy [ ] would not present a danger or a risk to Jessica [ ]." Timothy has not seen or spoken with Jessica since the divorce.

In 1997, Carla petitioned the circuit court to terminate Timothy's parental rights on the ground that he had been denied placement for more than one year. *See* § 48.415(4), STATS. Under that section, the order denying placement must contain a warning to the parent that he or she is in danger of losing his or her parental rights. *See id.* There was no warning attached to the 1993 placement order, and thus the court denied the TPR petition. Then, on June 20, 1997, the court signed an amendment to the Judgment of Divorce providing Timothy with the necessary termination warnings. After that, Timothy wrote Jessica five or six letters. These letters are the only contact Timothy has had

697

with Jessica, now nine years old, since Timothy and Carla divorced when Jessica was three.

In August 1998, Carla again petitioned the circuit court to terminate Timothy's parental rights. Carla alleged dual grounds for termination: abandonment and continuing denial of physical placement. *See* § 48.415(1)(a), (4), STATS. The circuit court granted the petition on the ground of abandonment, but refused to find the continuing denial of placement ground due to the fact that it was not clear from the record that Timothy had actually received the warning contained in the amended divorce judgment. Timothy filed a notice of intent to appeal within the thirty-day period prescribed by statute, *see* § 808.04(7m), RULE 809.107(2), STATS., but failed to serve a copy of the notice on Carla and her counsel, as required by RULE 809.107(2).

We begin by addressing the threshold question whether the lack of service of notice of intent deprives this court of jurisdiction. We do so because it is the court's duty to inquire as to whether we lack jurisdiction to proceed. *See Taylor v. State,* 59 Wis. 2d 134, 137, 207 N.W.2d 651, 652 (1973). The first step in our analysis is consideration of *State v. Rhone,* 94 Wis. 2d 682, 288 N.W.2d 862 (1980). There, the defendant filed a petition to review within the thirty-day time limit set forth in § 808.10, STATS., but failed to serve it on the attorney general until after the thirty days had run. *See id.* at 683, 288 N.W.2d at 863. The State argued that this defect was jurisdictional. *See id.* The court noted that § 808.10 requires filing within thirty days but "is silent as to service." *Id.* The petition to review, however, is "a paper filed in an appellate court" and thus falls within the service requirements of RULE 809.80(2)(a), STATS. (making general service require-

ments of § 801.14(1), (2) and (4), STATS., applicable to appellate papers). *Id.* at 685, 288 N.W.2d at 864. Failure to serve is a violation of the rules, but not a jurisdictional defect. *See id.* at 687, 288 N.W.2d at 865. The court "obtains jurisdiction over the appeal when a petition to review is *filed,*" not when it is served on opposing counsel. *Id.* (emphasis added). The court ultimately declined to dismiss the petition, despite noncompliance with the service requirements. *See id.* at 688, 288 N.W.2d at 865; RULE 809.83(2), STATS.

An analogous question was presented in *Rhyner v. Sauk County,* 118 Wis. 2d 324, 348 N.W.2d 588 (Ct. App. 1984). There, a notice of appeal was filed but not served on opposing counsel until nearly three months later. *See id.* at 325–26, 348 N.W.2d at 589. Appellant argued that there was no service requirement in RULE 809.10, STATS. ("Initiating the appeal"). The court, however, reasoned that the notice of appeal, like the petition to review in *Rhone,* was subject to the general service requirements of § 801.14(1), (2) and (4), STATS., by virtue of RULE 809.80(2), STATS. *See Rhyner,* 118 Wis. 2d at 327, 348 N.W.2d at 590. Thus, failure to serve the notice of appeal was grounds for dismissal under RULE 809.83(2), STATS., but not a jurisdictional defect. *See Rhyner,* 118 Wis. 2d at 328, 348 N.W.2d at 590. In that case, the court elected to dismiss the appeal. *See id.* at 329, 348 N.W.2d at 591.

Here, because this is a TPR case, initiation of the appeal is governed by RULE 809.107, STATS., not RULE 809.10, STATS. In a TPR appeal, a person must file a notice of intent to appeal prior to the notice of appeal. *See* RULE 809.107(2), (5). While in other civil cases it is the timely filing of a notice of appeal that confers jurisdiction on this court, in a TPR case it is the filing of the notice of intent. *See* RULES 809.10(1)(a) ("A person shall

initiate an appeal by filing a notice of appeal . . . ."); 809.107(2) ("A person shall initiate an appeal . . . by filing . . . a notice of intent to appeal . . . ."). Moreover, RULE 809.107, unlike the statutes operating in the *Rhone* and *Rhyner* cases, does expressly require service of the notice of intent on the child's parent and opposing counsel within thirty days after the entry of the termination order. *See* RULE 809.107(2).

Still, despite the fact that an express service provision exists in RULE 809.107, STATS., where it does not in the rules governing petitions to review and notices of appeal in other civil actions, we are satisfied that service does not initiate the appeal, filing does. *See id.* Our view is that the legislature's inclusion of express service requirements in RULE 809.107 was merely to clarify who all must be served in a TPR appeal, as opposed to the generic requirement of service "upon each of the parties" found in § 801.14(1), STATS. Furthermore, the designation of the filing of the notice of intent, rather than the notice of appeal, as the jurisdiction-conferring event jibes with the entire expedited procedure in TPR appeals. *See Gloria A. v. State*, 195 Wis. 2d 268, 279, 536 N.W.2d 396, 400 (Ct. App. 1995) (noting the importance of finality and the significant effect of passage of time when dealing with questions of familial ties). As opposed to the forty-five days in which to file a notice of appeal in the usual case, *see* § 808.04(1), STATS., one wishing to appeal a TPR order must file the notice of intent within thirty days, *see* § 808.04(7m). The shortened filing period serves to jump start the appellate procedure so that the parties' lives can go on. Thus, even though the notice of intent was not properly served in this case, the cause is legitimately before us.

Carla urges this court to dismiss Timothy's appeal, claiming that his failure to timely serve has prejudiced her. Because Carla did not receive Timothy's notice of intent to appeal, she concluded that he had chosen to reconcile himself to the termination of his parental rights. Relying on the finality of the circuit court's order, she told Jessica that Timothy's rights had been terminated and that the road was clear for Robert, Carla's husband, to adopt Jessica. Furthermore, Carla argues, because the timelines in TPR cases are considerably shortened, her counsel lost a significant amount of time in which to research and brief the issues presented. Finally, she contends that the deadlines in a TPR case should be strictly enforced in order to effect the speedy resolution of cases, the importance of which is demonstrated by the accelerated procedures.

Timothy responds that a dismissal due to lack of service would give rise to a claim of ineffective assistance of counsel. Our supreme court has not decided if there is a constitutional right to effective assistance of counsel in a TPR proceeding. *See Rhonda R.D. v. Franklin R.D.*, 191 Wis. 2d 680, 696, 530 N.W.2d 34, 40 (Ct. App. 1995). However, "the statutory right of an indigent parent to court-appointed counsel in a TPR proceeding includes the right to effective assistance of counsel." *Id.* Here, Timothy was represented by the state public defender at the TPR proceeding. Timothy contends that if we grant Carla's motion to dismiss, we should remand the case for a *Machner*[1] hearing.

We note that Carla's prejudice argument is meritorious. However, were we to dismiss this appeal due to Timothy's counsel's failure to serve Carla, we would have to address Timothy's ineffective assistance of

[1] *See State v. Machner*, 92 Wis. 2d 797, 804, 285 N.W.2d 905, 908–09 (Ct. App. 1979).

counsel claim, which would also be persuasive. Because we do not believe it would be fair to visit counsel's error in this case upon Timothy, because time is of the essence in TPR proceedings, and because resolution of this appeal—one way or the other—would be in Jessica's best interests, we choose to reach the merits of the case.

Timothy claims that the circuit court erred in finding sufficient evidence to terminate his parental rights on abandonment grounds because Timothy "was prohibited by a family court order from visitation with Jessica." Under § 48.415(1)(a)3, STATS., abandonment may be established by showing that "[t]he child has been left by the parent with any person, the parent knows or could discover the whereabouts of the child and the parent has failed to visit or communicate with the child for a period of 6 months or longer."[2] Paragraph (b) states that the time period under this section "shall not include any periods during which the parent has been prohibited by judicial order from visiting or communicating with the child." Timothy argues that none of the time in which the court order restricted him

[2] Both Carla and Timothy quote § 48.415(1)(a)2, STATS., not subd. (a)3, in their briefs. Subdivision (a)2 provides for establishment of abandonment when the child has been placed outside the parent's home by court order and the parent has failed to visit or communicate with the child for a period of 3 months or longer. The circuit court, however, in its decision, clearly was looking at subd. (a)3. Subdivision (a)3 may apply when a child remains with a parent pursuant to court order. *See Rhonda R.D. v. Franklin R.D.*, 191 Wis. 2d 680, 706–07, 530 N.W.2d 34, 44 (Ct. App. 1995). The order terminating Timothy's rights does not specify the subdivision under which abandonment was established. We review the order under the provisions of subd. (a)3, as that is the one the circuit court referred to in its oral decision.

from visiting Jessica should count against him. He claims that the existence of *either* a court order prohibiting visitation *or* a court order prohibiting communication completely tolls the time to establish abandonment under subd. (a)2 or 3. In Timothy's view, even if he is only prohibited from visiting and not communicating, he still gets to take advantage of the tolling statute because one of the means by which he can establish contact with his daughter has been foreclosed to him. Even if another means of contact—communication—is still open to him, the tolling statute is still operative.

The trial court reached a different conclusion, one with which Carla agrees. The trial court held that what para. (b) means is that the trial court cannot count against Timothy time in which he has not visited when he was prohibited by court order from doing so. Similarly, if the trial court order had prohibited communication, then the court may not count Timothy's failure to communicate. But if Timothy was only precluded from doing one but could have done the other, and did not, then he is still guilty of abandonment. The trial court said:

> I read the statute as, in effect, saying to me, Judge, if an individual is prohibited by a judicial order or an order from having visitation with the child I can't count that against them, and I think that's absolutely correct. I can't count that, but if the judicial order only refers to visitation and does not preclude an individual from communicating or phoning a child or having that type of contact with the child I don't believe that sub b requires that I not take that into account in evaluating a man, and I think that correctly interpreted, which, of course, is the way I'm interpreting it.

The interpretation of a statute is a question of law we review de novo. *See Grosse v. Protective Life Ins. Co.*, 182 Wis. 2d 97, 105, 513 N.W.2d 592, 596 (1994). If the language of the statute is unambiguous, we merely apply the statute to the facts of the case. *See MCI Telecomm. Corp. v. State*, 203 Wis. 2d 392, 400, 553 N.W.2d 284, 287–88 (Ct. App. 1996), *aff'd*, 209 Wis. 2d 310, 562 N.W.2d 594 (1997). If reasonable minds could differ as to the statute's meaning, it is ambiguous and we must interpret it to best effect the legislative intent. *See Voss v. City of Middleton*, 162 Wis. 2d 737, 749–50, 470 N.W.2d 625, 629–30 (1991).

■

First of all, Timothy's whole legal argument is based upon the factual claim that he has been judicially prohibited from visiting Jessica. We doubt that this is true. We will have more to say about that in a moment. But we will entertain, for argument's sake, Timothy's claim that he has been judically foreclosed from visitation and will address the law based on this claim. We hold that § 48.415(1)(b), STATS., is unambiguous. We conclude that the logical interpretation of § 48.415(1)(b) is that the parent cannot be penalized for failure to do something which he or she is prohibited from doing. However, a court order prohibiting visitation, but allowing communication, does not excuse a complete lack of contact. Thus, Timothy's failure to visit Jessica, if it indeed was the product of judicial order, cannot be counted in computing the time period under subd. (a)3. But, he was not prohibited from communicating with her and he could have done so to maintain contact. The time in which he did not communicate with her can and does count in a determination of abandonment. This interpretation comports with the

whole focus of the abandonment subsection, which is "on the parent's contact, or lack of contact, with the child. The purpose of the subsection is to permit a finding of abandonment where there has been incidental or no contact for specified periods of time . . . ." *Rhonda R.D.*, 191 Wis. 2d at 705, 530 N.W.2d at 44. The message is that if a parent wishes to maintain that title and the rights that go along with it, he or she must maintain contact with the child. When the parent is prohibited from visitation by a court order, he or she may still communicate with the child via phone calls and letters. Thus, when á court prohibits visitation but does not prohibit communication, periods in which there has been no contact whatsoever will be counted under subds. (a)2 and 3.

Here, there was ample support in the record for the court to find abandonment under § 48.415(1)(a)3, STATS. Timothy has not seen or spoken with Jessica since 1993. Only after Carla petitioned to terminate his parental rights in 1997 did he begin to write to Jessica. Since then, he has sent her five or six letters. The circuit court found that

> for a period beginning in 1993 . . . he has not had any contact with the child, has made a marginal effort to write the child only after the termination of parental rights issue was raised in the court for the first time, and on that occasion there appears to be four or six letter that were sent, and that's the extent of this father's involvement in the life of this child.

The record supports the finding that sufficient grounds for abandonment were shown under § 48.415(1)(a)3.

■

Now we return to Timothy's initial premise—that he was judicially foreclosed from visiting his daughter. What the court order actually did was not to deny visitation, but to create a condition precedent that Timothy had to fulfill before he could exercise visitation. The court order allowed Timothy supervised visitation if he saw a therapist and made such progress that the therapist could opine how visitation between Timothy and Jessica would not be harmful to Jessica. In other words, the trial court gave Timothy the "keys to the door." And what did Timothy do? Not much. While Timothy testified that he did seek counseling after the divorce, he quit some time in 1994. Thus, he did not even finish the first step toward reinstating visitation with Jessica. As the trial court noted, "the record is utterly absent . . . of any attempts of Mr. [N] . . . to be a parent [or of] any meaningful response to his responsibility as a parent." We are confident that Timothy's abandonment of therapy is evidence of his abandoning Jessica as well.[3] Given all of these circumstances, we affirm the circuit court's finding of abandonment under § 48.415(1)(a)3, STATS.

*By the Court.*—Order affirmed.

■

---

[3] We acknowledge that there might be a case where a person subject to a condition precedent much like Timothy's would be unable to secure a "green light" from the therapist no matter how much he or she cooperated. In such a circumstance, a court might well declare that the condition precedent is incapable of performance and that visitation has been effectively prohibited by court order. *Cf. State v. Milashoski,* 163 Wis. 2d 72, 88–89, 471 N.W.2d 42, 49 (1991). This circumstance does not appear to be present in Timothy's case.