COURT OF APPEALS
DECISION
DATED AND FILED

June 27, 2019

Sheila T. Reiff
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No. **2019AP183**

Cir. Ct. No. 2018TP12

STATE OF WISCONSIN

IN COURT OF APPEALS
DISTRICT III

IN RE THE TERMINATION OF PARENTAL RIGHTS TO A. M. S.,
A PERSON UNDER THE AGE OF 18:

OUTAGAMIE COUNTY DEPARTMENT OF HEALTH AND HUMAN SERVICES,

PETITIONER-RESPONDENT,

V.

J. M. J.,

RESPONDENT-APPELLANT.

APPEAL from an order of the circuit court for Outagamie County: VINCENT R. BISKUPIC, Judge. *Affirmed*.

¶1 SEIDL, J.[1] J.M.J. appeals a circuit court order terminating her parental rights to her child, Alexa.[2] J.M.J. asserts that she is entitled to a new trial because, during the grounds phase of her termination of parental rights (TPR) proceedings, the Outagamie County Department of Health and Human Services (the Department) committed prosecutorial misconduct when it elicited testimony from a witness who mentioned a topic that the parties, in J.M.J.'s view, had agreed not to introduce in the presence of the jury. We conclude the Department did not commit prosecutorial misconduct. Therefore, we affirm.[3]

## BACKGROUND

¶2 In February 2018, the Department petitioned the circuit court to involuntarily terminate J.M.J.'s parental rights.[4] It alleged that grounds existed to terminate J.M.J.'s parental rights under WIS. STAT. § 48.415(2), a child in continuing need of protection or services, and § 48.415(6), failure to assume parental responsibility. J.M.J. contested the petition and requested a jury to decide whether grounds existed to terminate her parental rights.

---

[1] This appeal is decided by one judge pursuant to WIS. STAT. § 752.31(2) (2017-18). All references to the Wisconsin Statutes are to the 2017-18 version unless otherwise noted.

[2] We use a pseudonym to refer to J.M.J.'s children, rather than their initials.

[3] Cases appealed under WIS. STAT. RULE 809.107 "shall be given preference and shall be taken in an order that ensures that a decision is issued within 30 days after the filing of the appellant's reply …." *See* RULE 809.107(6)(e). Conflicts in this court's calendar and other expedited appeals on our docket have resulted in a delay. It is therefore necessary for this court to sua sponte extend the deadline for a decision in this case. *See* WIS. STAT. RULE 809.82(2)(a); ***Rhonda R.D. v. Franklin R.D.***, 191 Wis. 2d 680, 694, 530 N.W.2d 34 (Ct. App. 1995). Accordingly, we extend our deadline to the date this decision is issued.

[4] The Department also petitioned to terminate Alexa's father's parental rights. The disposition of his parental rights is not at issue in this appeal.

¶3    At the grounds hearing, the Department called Dr. Denise Valenti-Hein, a clinical psychologist, as one of its witnesses. Doctor Valenti-Hein testified to a 2016 psychological evaluation of J.M.J. she previously had prepared. To complete her 2016 evaluation, Dr. Valenti-Hein stated that she relied upon her prior 2010 evaluation of J.M.J. Both her 2010 and 2016 evaluations were entered into evidence without objection.

¶4    During her testimony, Dr. Valenti-Hein summarized her 2010 evaluation because it was information she considered when she completed her 2016 evaluation. The Department then asked Dr. Valenti-Hein whether there were "any other recommendations" she made in her 2016 report, to which she replied:

> One more. And that had to do with [J.M.J.'s] own stability. And the fact that at the time I saw [J.M.J.'s children] … there wasn't a very strong bond at that point with [J.M.J.] … [Alexa] in particular seemed more bonded to her foster mom. So if this moved to termination, one of the recommendations was that I hoped that it could be an open adoption situation, so that it could be like her situation with [Cory].

J.M.J. had previously voluntarily terminated her parental rights to Cory.

¶5    Following the Department's direct examination of Dr. Valenti-Hein, J.M.J.'s trial counsel requested to "put something on the record outside the presence of the jury." The circuit court instead held a sidebar, with the jury still present. After the sidebar, the court gave an instruction to Dr. Valenti-Hein:

> One thing I wanted to instruct the witness is[,] especially in regard to … the 2016 [evaluation], is [that the] focus of this hearing is mainly on [Alexa] …. The time frame of the most recent years—we're going to try and at least limit the scope to [Alexa]. I know there was a brief reference to an older child. But the attorneys have agreed that that is not relevant for what we're deciding here this week.

> So as you get follow[-]up questions, try and limit your responses to what has been going on with [J.M.J.]'s interaction with [Alexa] in particular ….

The court later summarized the sidebar discussion on the record, outside the presence of the jury, stating:

> Couple of side[]bars this morning.… There's one related to when Dr. Denise Valenti-Hein was on the stand. She made I think one, maybe two references to the older child [Cory]. They were pretty brief. And apparently the lawyers wanted to talk to me about that, because they had an agreement not to get into that other than maybe some brief reference.
>
> So when we continued, I instructed Dr. Valenti-Hein to focus on the 2016 [evaluation] and … [Alexa]. And she did follow those directions. So that was the concern raised at side[]bar.

The Department further sought to clarify the parties' "agreement" in this regard on the record later in the proceeding: "I believe the concern with the testimony of Dr. Valenti-Hein was the fact that she mentioned an adoption. And that … the parties stipulated … verbally to not bring up the fact that [J.M.J.] doesn't have rights to certain children, or that she [has] voluntarily terminated any rights." The court responded:

> Okay. And there was a brief reference to that, but it wasn't anything that was highlighted. You know, if you want me to instruct the jury on something, you guys can draft something on that. But it may highlight something that was very briefly mentioned. So I will leave that up to the attorneys to talk about in the break, if you want some curative instruction read at the end of the case.

Neither party requested a curative instruction.

¶6 The jury found both grounds existed to terminate J.M.J.'s parental rights as alleged in the TPR petition—namely, continuing need of protection or

4

services, and failure to assume parental responsibility. Following a dispositional hearing, the circuit court terminated J.M.J.'s parental rights to Alexa. J.M.J. now appeals.

## DISCUSSION

¶7  J.M.J. argues that the Department engaged in "prosecutorial misconduct" by violating the parties' oral agreement not to discuss Cory in the presence of the jury. She contends that misconduct prejudiced her defense, entitling her to a new trial at the grounds phase of her TPR proceedings. As best as we can discern,[5] J.M.J. is asserting the information the parties orally agreed not to discuss was irrelevant and prejudicial evidence, and the circuit court erred by admitting parts of Dr. Valenti-Hein's testimony that she believes violated the parties' agreement.

¶8  Prosecutorial misconduct occurs when a prosecutor's statements or conduct "so infected the trial with unfairness" so as to prejudice the opposing party and "make the resulting conviction a denial of due process." *State v. Mayo*, 2007 WI 78, ¶43, 301 Wis. 2d 642, 734 N.W.2d 115 (citation omitted). Improper statements alone are insufficient to overturn a jury verdict. *See id.* Rather, those statements "must be looked at in context" within the jury trial's entirety. *Id.* Testimony is unfairly prejudicial when it "has a tendency to influence the outcome by improper means or if it appeals to the jury's sympathies, arouses its sense of

---

[5] J.M.J. cites to only one case in her brief-in-chief: *State v. Marinez*, 2011 WI 12, 331 Wis. 2d 568, 797 N.W.2d 399. Remarkably, however, J.M.J. states in her reply brief that "*Marinez* offer[s] no guidance regarding th[is] case before this Court." We admonish J.M.J.'s counsel that arguments must contain "citations to the authorities, statutes and parts of the record" relied upon. *See* WIS. STAT. RULE 809.19(1)(e). Taking J.M.J.'s statement in her reply brief at face value, J.M.J.'s brief-in-chief lacks any authoritative case law to support her arguments.

horror, provokes its instinct to punish or otherwise causes a jury to base its decision on something other than the established propositions in the case." *State v. Gray*, 225 Wis. 2d 39, 64, 590 N.W.2d 918 (1999) (citation omitted).

¶9 In general, litigants must contemporaneously object to the admission of the opposing party's evidence so as to allow the circuit court an opportunity to correct any alleged errors during trial. *See State v. Marinez*, 2011 WI 12, ¶49, 331 Wis. 2d 568, 797 N.W.2d. A party's failure to object at the time of alleged errors forfeits review of such errors on appeal. *Id.* However, some errors are "so plain or fundamental" that they cannot be forfeited and will be considered on appeal despite the absence of an objection. *Id.* Here, J.M.J. did not raise an objection at trial to any of the Department's questioning, nor did she request a mistrial. Nonetheless, we exercise our discretion to review J.M.J.'s argument.[6] *See State v. Kaczmarski*, 2009 WI App 117, ¶7, 320 Wis. 2d 811, 772 N.W.2d 702.

¶10 Because J.M.J. did not object at trial to the remarks and conduct she now challenges, the Department argues—and we agree—that we review this issue only for plain error. *See United States v. Johnson*, 437 F.3d 665, 671 (7th Cir. 2006). Under the plain error standard, J.M.J. must establish not only that the Department's remarks or conduct were improper and denied her a fair trial, but also that they prejudiced her by altering the outcome of the proceedings. *See id.*

---

[6] The Department summarily asserts that J.M.J. forfeited the issue of prosecutorial misconduct for appellate review by raising the issue only at sidebar. However, the forfeiture rule is one of judicial administration, and whether to apply it is for this court's discretion. *See State v. Kaczmarski*, 2009 WI App 117, ¶7, 320 Wis. 2d 811, 772 N.W.2d 702. Because TPR proceedings implicate a parent's fundamental liberty interest to determine the care, custody and management of his or her child, *Steven V. v. Kelley H.*, 2004 WI 47, ¶22, 271 Wis. 2d 1, 678 N.W.2d 856, we choose not to apply forfeiture and will address the merits of J.M.J.'s argument.

¶11     In J.M.J.'s view, the Department violated the parties' oral agreement during its questioning of Dr. Valenti-Hein.  J.M.J. contends that in response to the Department's open-ended questions on direct examination, Dr. Valenti-Hein mentioned Cory's name and, in one instance, "let the jury know that [J.M.J.] no longer had parental rights to" him.  J.M.J. argues that providing the jury with "damaging" information about Cory and her lack of parental rights to him violated the parties' oral agreement.  She asserts the parties had agreed that such information was irrelevant and prejudicial, and the trial was therefore infected with unfairness.  We disagree with J.M.J. that the Department engaged in misconduct that denied her a fair trial or prejudiced her by altering the outcome of the proceedings.  *See id.*

¶12     We first conclude the Department did not violate the parties' agreement.  The Department recited the agreement, without objection, as follows: "[T]he parties stipulated … verbally to not bring up the fact that [J.M.J.] doesn't have rights to certain children, or that she [has] voluntarily terminated any rights."  The parties' agreement concerned J.M.J.'s lack of parental rights to Cory or her prior voluntary termination of parental rights to him, not a blanket prohibition on acknowledging his existence.  Doctor Valenti-Hein mentioned only that J.M.J. had an open adoption situation with a son named Cory.  The Department did not ask questions concerning J.M.J.'s lack of parental rights to Cory or her prior voluntary termination of parental rights to him.  Rather, it asked Dr. Valenti-Hein open-ended questions about her evaluations of J.M.J.  The Department asked Dr. Valenti-Hein to "broadly" explain her 2010 evaluation out of necessity so as to give context for her 2016 evaluation because Dr. Valenti-Hein primarily relied upon her 2010 evaluation, which focused on J.M.J.'s relationship with Cory, to make her 2016 evaluation.

¶13 Moreover, even if Dr. Valenti-Hein's testimony regarding Cory could be construed as violating the parties' oral agreement, that evidence was not prejudicial such that it infected J.M.J.'s trial with unfairness. After what the circuit court found were "brief" references about Cory, it instructed Dr. Valenti-Hein to focus on J.M.J.'s relationship with Alexa. The court found that she complied with its instructions. The court also offered to give a curative instruction to the jury, but neither party, nor the guardian ad litem, accepted the court's offer. In fact, after J.M.J.'s trial counsel requested the sidebar, it was the Department itself that had raised concerns about Dr. Valenti-Hein's testimony and sought to give J.M.J. an opportunity to address any potential issues she had with it, but she took no action. To the extent Dr. Valenti-Hein's statements may have implied that J.M.J. no longer had parental rights to Cory, those brief references—which no party determined were egregious enough to warrant a curative instruction from the court—were not so prejudicial as to infect the jury's fact-finding with unfairness. In all, the Department did not engage in prosecutorial misconduct.[7]

---

[7] The Department asks us to dismiss J.M.J.'s appeal for her untimely filing of the notice of appeal and her brief-in-chief. In her reply brief, J.M.J., by counsel, replied that she requested from this court a third extension to file the brief-in-chief—even though we had previously denied her counsel's second request for an extension. While we question the veracity of this assertion because there is no record that the third request had actually been made, we nonetheless conclude, for different reasons than J.M.J. asserted, that J.M.J.'s notice of appeal and her brief-in-chief were timely, and that we have jurisdiction over this appeal, regardless of whether J.M.J.'s notice of appeal was defective, *see* **Carla B. v. Timothy N.**, 228 Wis. 2d 695, 698-700, 598 N.W.2d 924 (Ct. App. 1999).

Even so, we admonish J.M.J.'s counsel for her numerous violations of the rules of appellate procedure during the pendency of this appeal. The court of appeals is a fast-paced, high-volume court, and J.M.J.'s counsel's plethora of rules violations needlessly impeded our review of this appeal's merits. *See* **State ex rel. Swan v. Elections Bd.**, 133 Wis. 2d 87, 93, 394 N.W.2d 732 (1986).

*By the Court.*—Order affirmed.

This opinion will not be published.  *See* WIS. STAT. RULE 809.23(1)(b)4.