COURT OF APPEALS
DECISION
DATED AND FILED

April 3, 2025

Samuel A. Christensen
Clerk of Court of Appeals

**NOTICE**

This opinion is subject to further editing. If published, the official version will appear in the bound volume of the Official Reports.

A party may file with the Supreme Court a petition to review an adverse decision by the Court of Appeals. *See* WIS. STAT. § 808.10 and RULE 809.62.

Appeal No. **2025AP85**

STATE OF WISCONSIN

Cir. Ct. No. 2023TP17

IN COURT OF APPEALS
DISTRICT IV

---

IN RE THE TERMINATION OF PARENTAL RIGHTS TO **R.J.H.**,
A PERSON UNDER THE AGE OF **18**:

**J.H.**,

  PETITIONER-RESPONDENT,

 V.

**J.L.B.**,

  RESPONDENT-APPELLANT.

---

APPEAL from an order of the circuit court for La Crosse County: GLORIA L. DOYLE, Judge. *Reversed and cause remanded with directions*.

¶1 GRAHAM, J.[1] J.L.B. appeals a dispositional order, entered at the conclusion of this termination of parental rights (TPR) proceeding, that terminated her rights with respect to her younger son, R.H. In addition to challenging the circuit court's exercise of discretion at the dispositional phase, J.L.B. also challenges the court's grant of partial summary judgment at the grounds phase of the proceeding.

¶2 I conclude that there are genuine issues of fact as to the alleged grounds for termination and, therefore, that the circuit court erred by granting partial summary judgment. I reverse the summary judgment order, and because there has not yet been a finding of unfitness, I also reverse the dispositional order terminating J.L.B.'s parental rights. I remand the matter for a fact-finding hearing in accordance with WIS. STAT. § 48.424 and other proceedings consistent with *State v. Bobby G.*, 2007 WI 77, ¶6, 301 Wis. 2d 531, 734 N.W.2d 81.

## BACKGROUND

¶3 This TPR proceeding began in December 2023, when R.H.'s biological father, J.H., filed a petition to terminate J.L.B.'s parental rights.

¶4 A TPR case proceeds in two phases: the grounds phase and the dispositional phase. *Steven V. v. Kelley H.*, 2004 WI 47, ¶¶24, 27, 271 Wis. 2d 1, 678 N.W.2d 856. WISCONSIN STAT. § 48.415 identifies statutory grounds of parental unfitness, and during the grounds phase, if the petitioner proves the existence of one or more grounds by clear and convincing evidence, "the court

---

[1] This appeal is decided by one judge pursuant to WIS. STAT. § 752.31(2)(e) (2023-24) and is given preference under WIS. STAT. § 809.107. All references to the Wisconsin Statutes are to the 2023-24 version.

shall find the parent unfit." ***Steven V.***, 271 Wis. 2d 1, ¶¶24-25 (citing WIS. STAT. §§ 48.31(1), 48.424(4)). The case then proceeds to the dispositional phase, in which the court decides whether it is in the best interest of the child that the parent's rights be terminated. ***Steven V.***, 271 Wis. 2d 1, ¶27; WIS. STAT. § 48.426(2).

¶5 Here, J.H.'s petition alleged two grounds to terminate J.L.B.'s parental rights: abandonment under WIS. STAT. § 48.415(1)(a)3. and failure to assume parental responsibility under § 48.415(6). J.L.B. contested the petition, and both parents were deposed.

¶6 J.H. then filed a motion for partial summary judgment on grounds. In his opening brief, J.H. focused his argument on abandonment. Specifically, J.H. argued that J.L.B. abandoned R.H. by failing to visit or communicate with him since their last supervised visit, which occurred on September 18, 2022. In his reply brief, J.H. also argued that J.L.B. failed to assume parental responsibility.[2] J.L.B. opposed the motion for summary judgment, and R.H.'s guardian ad litem filed a letter in support of the motion.

---

[2] J.H.'s summary judgment briefing includes citations to certain documents that were apparently filed in the paternity case and in J.L.B.'s criminal case, but J.H. did not file copies of those documents along with the summary judgment materials that were filed in the electronic record for this case. There are at least two problems with this approach. First, a circuit court's decision on summary judgment should generally be limited to the documents filed in the case. *See* WIS. STAT. § 802.08(2) (providing that summary judgment should be granted "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law"). Second, if a document is not filed in the circuit court's electronic record, it will not be part of the record on appeal. This presents a problem for appellate review by this court—even if it were appropriate to take judicial notice of documents filed in the other pending matters, the court of appeals does not have access to the electronic docket used by circuit courts. Therefore, if J.H. had not filed some of the documents that he intended as support for his motion as exhibits during the dispositional hearing, I could not access those documents as part of my review of this appeal.

¶7 The following undisputed facts are taken from the summary judgment materials, and primarily from J.L.B.'s deposition testimony.

¶8 R.H. was born in 2021. J.L.B. had been using drugs during the pregnancy, and there were drugs in R.H.'s system when he was born, requiring treatment in the neonatal intensive care unit. J.H. was adjudicated R.H.'s father several months later, and J.H. and J.L.B. were awarded joint legal custody, with primary placement to J.H. J.L.B. was R.H.'s primary caregiver for the first ten months of his life.

¶9 When R.H. was ten months old, he "overdosed" on an undetermined substance while in J.L.B.'s care. J.L.B. was charged with criminal neglect, and the conditions of the criminal bond initially prevented J.L.B. from having contact with R.H. The bond was later modified to allow contact as ordered by the family court commissioner.

¶10 In July 2022, the court commissioner entered an order that allowed J.L.B. to have visitation with R.H., subject to certain conditions. Specifically, J.L.B. was required to submit to testing for opiates and amphetamines, and she would be allowed to have supervised visits with R.H. if the tests results were negative. J.L.B. signed a stipulation in which she agreed to these terms as a condition of continued visitation with R.H.

¶11 J.L.B. had visits with R.H. through September 2022, even though she had not submitted to drug testing. However, the agency that had been administering the supervised visits eventually determined that J.L.B. was not compliant with the conditions of visitation. The last time that J.L.B. saw R.H. in person was during the last supervised visit, which occurred on September 18, 2022. J.L.B. attributed her reasons for not submitting to drug testing to a

4

"misunderstanding." However, she did not take any steps to resume the supervised visits after they ceased, and she never took any drug tests as ordered by the court commissioner.

¶12 J.L.B. attempted to contact J.H. about R.H. after the supervised visits ceased, but J.H. often did not respond to her messages. J.H. eventually blocked J.L.B.'s phone number.

¶13 J.L.B. was able to obtain some information about R.H. from Jenny, the grandmother of J.L.B.'s older son, who is R.H.'s half-brother. J.L.B.'s older son lived with Jenny and her husband, and Jenny often cared for R.H. while J.H. was at work.

¶14 On some occasions when J.L.B.'s older son and R.H. were in Jenny's care, the older son would initiate a video call with J.L.B. J.L.B. indicated that one of the last times she saw R.H. was on December 23, 2023, when her older son initiated a video call with J.L.B., and R.H. was present in the frame and "participating" in the call. J.L.B. testified that this type of video contact occurred multiple times when R.H. was in Jenny's care. J.L.B.'s deposition testimony on this point seemed to come as a surprise to J.H.—in his own deposition, J.H. testified that he had not been aware of these contacts prior to hearing her deposition testimony, and that he had stopped asking Jenny to babysit R.H. for other reasons in early 2024.

¶15 In her deposition, J.L.B. acknowledged that she does not pay child support or daycare costs, and that she does not provide food, care items, or insurance for R.H. J.L.B. gave Jenny $40 for R.H.'s care on one occasion, and clothing for R.H. on a couple of occasions.

¶16    The circuit court issued an oral ruling in which it granted partial summary judgment, determining that there was no genuine dispute of fact regarding abandonment and failure to assume parental responsibility. The court acknowledged that summary judgment in a TPR proceeding is "disfavored" and "rare," but that it was warranted here because J.L.B. "had nothing to say in [her] defense that would create a question with regard to the facts." The court focused on the fact that J.L.B. had not visited R.H. for nearly two years, since the last supervised visit in September 2022. As the court explained, the placement order allowed visitation if J.L.B. was compliant with drug testing, but J.L.B. had not taken any steps towards compliance. The court did not address J.L.B.'s deposition testimony about the video calls in its ruling.

¶17    The circuit court scheduled a dispositional hearing. The guardian ad litem submitted a report that provided an analysis of the factors the court was to consider under WIS. STAT. § 48.426, and the parties presented evidence and argument at the hearing. Ultimately, the court found that it was in R.H.'s best interest that J.L.B.'s parental rights be terminated, and it entered an order terminating J.L.B.'s parental rights to R.H.

## DISCUSSION

¶18    J.L.B. challenges the circuit court's grant of partial summary judgment in the grounds phase, and she also challenges the court's exercise of discretion at the dispositional phase. I begin with the arguments about summary judgment.

## I. Grounds

¶19    The determination of whether there are grounds for finding a parent unfit is generally made by a jury, if one is requested.  However, the statutory summary judgment procedure is available during the grounds phase of a TPR proceeding.  *Steven V.*, 271 Wis. 2d 1, ¶¶32-35.  Partial summary judgment is appropriate "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment [on grounds] as a matter of law."  WIS. STAT. § 802.08(2).  The *Steven V.* court nonetheless cautioned that summary judgment would "ordinarily be inappropriate in TPR cases premised on … fact-intensive grounds for parental unfitness" such as abandonment and failure to assume parental responsibility. *Steven V.*, 271 Wis. 2d 1, ¶36.

¶20    The purpose of summary judgment is to avoid trials when there is nothing to try.  *Tews v. NHI, LLC*, 2010 WI 137, ¶42, 330 Wis. 2d 389, 793 N.W.2d 860.  To that end, courts do not resolve issues of fact on summary judgment—they instead decide whether there are genuine issues of material fact that preclude a grant of judgment as a matter of law.  *Brown County v. B.P.*, 2019 WI App 18, ¶34, 386 Wis. 2d 557, 927 N.W.2d 560.  In so doing, the court must construe the facts in the nonmoving party's favor. *Id.*

¶21    In a TPR proceeding, a petitioner moving for summary judgment has the burden of showing that, taking into account the heightened burden of proof that applies at the grounds phase, there are no genuine factual disputes regarding the asserted grounds for unfitness. *Id.*  When evaluating a summary judgment request, the court first "examine[s] the [petitioner's] submissions to determine

whether they establish a prima facie case for [partial] summary judgment." ***Id.***, ¶33. If the petitioner makes such a showing, the court then "turn[s] to the opposing party's submission to determine whether they show material facts are in dispute such that the opposing party is entitled to a trial." ***Id.*** On appeal, I review a grant of summary judgment de novo, applying the same methodology as the circuit court. ***Id.***, ¶34.

## A. Abandonment

¶22 Here, J.H.'s argument for summary judgment centered on WIS. STAT. § 48.415(1)(a)3., which addresses abandonment. For abandonment, the focus is "on the parent's contact, or lack of contact, with the child." ***Carla B. v. Timothy N.***, 228 Wis. 2d 695, 704-05, 598 N.W.2d 924 (Ct. App. 1999) (citation omitted). "The purpose of [the abandonment statute] is to permit a finding of abandonment where there has been incidental or no contact for specified periods of time." ***Id.*** at 705 (citation omitted).

¶23 To make a prima facie case under WIS. STAT. § 48.415(1)(a)3., a petitioner must show: (1) that the child was left with a relative or other person; (2) that the parent contesting the termination of rights knew or could have discovered the child's whereabouts; and (3) that the parent failed to visit or communicate with the child for a period of six months or longer. *See* § 48.415(1)(a)3.; *see also* WIS JI—CHILDREN 314. If those elements are satisfied, the parent has an affirmative defense if the parent can show "good cause," as defined in § 48.415(1)(c), for having failed to visit and communicate with the child throughout that period. *See* § 48.415(1)(c); *see also* WIS JI—CHILDREN 314 (addressing the requirements of a good cause affirmative defense).

¶24 Of the three elements needed for J.H.'s prima facie case, only the third—whether J.L.B. "failed to visit or communicate with [R.H.] for a period of six months or longer"—is in dispute here. I note that J.H. does not specify a six-month period, but from the pleadings and arguments, I infer it to be any six-month period within the 15 months between J.L.B.'s last visit with R.H. in September 2022 and the December 2023 filing of the petition.

¶25 It is undisputed that, because J.L.B. did not comply with the court-ordered conditions that would have allowed supervised visitation, she did not *visit* with R.H. at any point during those 15 months. J.H.'s prima facie case thus turns on whether there is a genuine dispute about whether J.L.B. failed to *communicate* with R.H. for six months or more during that time period.

¶26 Notably, the pertinent statutes provide that some contact is not significant enough to constitute "communication" for purposes of WIS. STAT. § 48.415(1)(a)3. More specifically, § 48.415(1)(b) provides that "[i]ncidental contact between parent and child [during the abandonment period] shall not preclude [a] court [or jury] from finding that the parent has failed to visit or communicate with the child." In ***Rock County Department of Social Services v. K.K.***, 162 Wis. 2d 431, 443-44, 469 N.W.2d 881 (Ct. App. 1991), this court considered this statutory provision and defined "incidental contact" to mean contact that is insignificant or occurred merely by chance. *See also* WIS JI—CHILDREN 314.

¶27 As noted, during her deposition, J.L.B. testified that she communicated with R.H. during video calls with her older son, when the older son and R.H. were both in Jenny's care. More specifically, J.L.B. testified about a specific occasion right before Christmas 2023 in which she interacted with R.H.

9

through a video call. When asked whether R.H. was "participating in a conversation with [her] or is [R.H.] in the background," J.L.B. clarified: "He was participating. He doesn't talk very well, but he's participating." And, when asked about other video calls she had with R.H. when he was in Jenny's care, J.L.B. testified to having had approximately 20 video calls in which her older son and R.H. were involved. Thus, the question is whether, making all reasonable inferences in J.L.B.'s favor, I can determine as a matter of law that the video contact between J.L.B. and R.H. was "incidental," such that it would not preclude J.H. from showing that J.L.B. failed to communicate with R.H. over a six-month period.

¶28 The circuit court did not address the video contact when it explained its reasons for granting summary judgment in J.H.'s favor. And J.H. does not develop any robust argument about the video contact on appeal. At best, J.H. attempts to minimize J.L.B.'s deposition testimony as involving "indirect communication," with R.H. "merely in the background" of the video frame and "not communicating" with J.L.B. That characterization is at odds with J.L.B.'s deposition testimony. J.H. also cites to the statutory provision on incidental contact, and he labels the video contact "incidental." But J.H. misses the point—it is his burden to show that there is no genuine dispute that J.L.B. failed to communicate with R.H., and J.L.B.'s uncontroverted testimony suggests that there was at least some degree of communication between J.L.B. and R.H. during the relevant time period. A properly instructed jury might well determine that the contact between J.L.B. and R.H. was "incidental," but J.H. cites no authority to support the proposition that this is a determination that a court, rather than a jury, can make on summary judgment.

¶29 Indeed, the parties do not cite any cases that address allegedly incidental contact in the summary judgment context. My own independent research suggests that, if I were to conclude on summary judgment that the video contact was "incidental" such that it falls under WIS. STAT. § 48.415(1)(b) as a matter of law, I would be the first court to reach such a conclusion.[3] Under the circumstances and resolving all inferences in J.L.B.'s favor, as I must, I conclude that there is a genuine dispute of fact about whether J.L.B. failed to communicate with R.H. during the relevant time period. *See* ***Steven V.***, 271 Wis. 2d 1, ¶36 (providing that summary judgment would "ordinarily be inappropriate in TPR cases premised on … fact-intensive grounds for parental unfitness" such as abandonment).

---

[3] In my independent research, I identified two published opinions and two opinions that are unpublished but citable that address the incidental contact standard in any depth. In three of the opinions, this court affirmed determinations made by a judge or jury following a fact-finding hearing on grounds. *See* ***Rock Cnty. DSS v. K.K.***, 162 Wis. 2d 431,443-44, 469 N.W.2d 881 (Ct. App. 1991) (reviewing a jury verdict, and concluding that a constitutional challenge to the "incidental contact" standard would have failed because the standard is not unconstitutionally vague); ***P.S. v. G.O.***, 168 Wis. 2d 259, 263, 265, 483 N.W.2d 591 (Ct. App. 1992) (reviewing a determination following a bench trial that a father's contacts with his child were not incidental); ***Brown Cnty. DHS v. K.Y.T.***, No. 2022AP531, unpublished slip op. ¶18 (Sept. 27, 2022) (reviewing a jury's finding of abandonment, and concluding that contact such as being in the same courtroom and relatives bringing the child to visit the parent in prison could be considered incidental and does not prevent a jury from finding that a parent failed to visit or communicate). The fourth case, ***Racine County Human Services Department v. R.E.***, No. 2016AP2039, unpublished slip op. (Mar. 15, 2017), briefly addressed the standard in the context of a grant of summary judgment. However, the facts in ***R.E.*** are materially distinguishable and do not support an argument that I could affirm the grant of summary judgment under these facts. In ***R.E.***, it was undisputed that the parent did not visit or communicate with the child during the relevant time period, but the parent did at one point give a gift to a social worker to be given to the child. *Id.*, ¶¶8, 10. The court of appeals determined that, if the indirect giving of this gift could be considered contact *with* the child, it was, at most, "incidental contact" that did not preclude a finding that the parent failed to visit or communicate with the child. *Id.*, ¶10 n.2.

I cite ***K.Y.T.*** and ***R.E.*** for their persuasive value, consistent with WIS. STAT. § 809.23(3)(b).

¶30    Having reached this conclusion, I need not address J.L.B.'s arguments about her "good faith" affirmative defense.  I nevertheless pause to briefly comment on the matter, so as to provide guidance for the proceedings on remand.  To establish the affirmative defense, J.L.B. would have the burden to prove all of the following:  that she had good cause for having failed to visit with R.H. during the period in question; that she had good cause for having failed to communicate with R.H. during the period in question; and that she communicated about R.H. with the person who had physical custody of R.H. during the period in question, or, if not, that she had good cause for having failed to communicate with that person during that period.  *See* WIS. STAT. § 48.415(1)(c); *see also* WIS JI—CHILDREN 314.  Here, J.L.B. makes some arguments about the later factors, but she does not squarely address the first.  If there was not a genuine dispute of fact about whether J.L.B. communicated with R.H. during the relevant period, I would agree with the circuit court that J.L.B.'s failure to take any steps that would allow her to resume visitation with R.H. is significant in the analysis, and that it would slant heavily in favor of a determination that J.L.B. did not have good cause for having failed to visit with R.H.  *See Carla B.*, 228 Wis. 2d at 706 (addressing circumstances in which a court order set a condition precedent that provided a parent "keys to the door" to resuming visitation and the parent failed to take steps towards satisfying the condition precedent).

### B.  Failure to Assume Parental Responsibility

¶31    The circuit court also granted J.H.'s motion for partial summary judgment based on a second ground, J.L.B.'s failure to assume parental responsibility under WIS. STAT. § 48.415(6).  But here, too, there are genuine disputes of material fact.

¶32 Failure to assume parental responsibility is established by "proving that the parent … [has] not had a substantial parental relationship with the child." WIS. STAT. § 48.415(6)(a). A substantial parental relationship is defined as "the acceptance and exercise of significant responsibility for the daily supervision, education, protection and care of the child." *See* § 48.415(6)(b). The fact-finder is allowed to consider, among other things, whether the parent has expressed concern for or interest in the support, care, or well-being of the child, and whether the person has neglected or refused to provide care or support for the child. *See* § 48.415(6)(b). When assessing this ground for termination, "[t]he fact-finder … is permitted to look at the child's life as a whole, and to decide whether, given all the facts, there has been an assumption of parental responsibility." *Tammy W-G. v. Jacob T.*, 2011 WI 30, ¶35, 333 Wis. 2d 273, 797 N.W.2d 854.

¶33 Here, as the circuit court recognized, many of the relevant facts are undisputed and cut in J.H.'s favor, but there is also undisputed evidence that J.L.B. was R.H.'s primary caretaker during the first 10 months of his life. There is also some evidence that J.L.B. may have provided a small amount of money and clothing for R.H.'s care on a couple of occasions. Given that parental responsibility is assessed by reviewing the circumstances throughout the child's entire life, I cannot conclude that J.H. is entitled to judgment as a matter of law on this ground.

## II. Disposition

¶34 Finally, J.L.B. contends that the circuit court erred at the dispositional phase because the court did not consider the "best interest of the child" factors identified in WIS. STAT. § 48.426. At disposition, "[t]he court should explain the basis for its disposition, on the record, by alluding specifically

13

to the factors in WIS. STAT. § 48.426(3) and any other factors that it relies upon in reaching its decision." ***Sheboygan Cnty. DH&HS v. Julie A.B.***, 2002 WI 95, ¶30, 255 Wis. 2d 170, 188, 648 N.W.2d 402; *see also **Darryl T.-H. v. Margaret H.**,* 2000 WI 42, ¶35, 234 Wis. 2d 606, 610 N.W.2d 475 ("[W]hile it is within the province of the circuit court to determine where the best interests of the child lie, the record should reflect adequate consideration of and weight to each factor."). Here, the circuit court did not explicitly refer to any of the factors when it rendered its decision, yet some of the court's comments could be read as an implicit consideration of at least some of the factors. In the end, I need not resolve whether the court's discussion was sufficient because, as stated, partial summary judgment should not have been granted during the grounds phase of the proceeding.

¶35     For all these reasons, I reverse the order granting partial summary judgment in J.H.'s favor, and because there has not yet been a finding of unfitness, I also reverse the dispositional order terminating J.L.B.'s parental rights. I remand the matter for a fact-finding hearing in accordance with WIS. STAT. § 48.424 and other proceedings consistent with ***Bobby G.***, 301 Wis. 2d 531, ¶6.

*By the Court.*—Order reversed and cause remanded with directions.

This opinion will not be published. *See* WIS. STAT. RULE 809.23(1)(b)4.